IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Civil Action No. _____

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE ALAMANCE COUNTY BRANCH, et al. | )<br>)<br>)<br>)<br>) |
| Plaintiffs, | ) **[PROPOSED] TEMPORARY** |
| | ) **RESTRAINING ORDER** |
| v. | )<br>) |
| JERRY PETERMAN, et al., | )<br>) |
| Defendants. | ) |

Plaintiffs Alamance County Branch of the National Association for the Advancement of Colored People ("NAACP"), Tamara O. Kersey, Colleen Tenae Turner, Terence Colin Dodd, Destiny Clarke, Annie Simpson, Nerissa Rivera, Adam Rose, and Gregory Drumwright, have moved pursuant to Fed. R. Civ. P. 65 and LR 65.1 for a temporary restraining order and a preliminary injunction restraining enforcement of Chapter 18, Art. VI, Sections 18-172 and 18-174 through 181 of the City of Graham ("City"), North Carolina's Code of Ordinances ("the Ordinance"). Among other things, the Ordinance makes it unlawful for any person to gather with anyone else "for the purpose of protesting" or "making known any position or thought" anywhere in the City without first obtaining the Chief of Police's permission at least 24 hours in advance. Plaintiffs argue that the Ordinance violates the First and Fourteenth Amendments to the United States Constitution.

1

After review of the declarations, documentary evidence, and briefing submitted by Plaintiffs, the Court will grant the motion for a temporary restraining order.

## BACKGROUND

The Ordinance provides that "[n]o parade, picket line or group demonstration is permitted on the sidewalks or streets of the city unless a permit therefor has been issued by the city." Chapter 18, Art. VI. § 18-175. It defines group demonstration as "any assembly together or concert of action between two or more persons for the purpose of protesting any matter or making known any position or thought of the group or of attracting attention thereto," parade as "any parade, march, ceremony, show, exhibition or procession of any kind in or upon the public streets, sidewalks, parks or other public places," and picket line as "any persons formed together for the purpose of making known any position or promotion of said persons or on behalf of any organization." *Id.* § 18-172.

To enforce the Ordinance, the Chief of Police is authorized to:

(1) Require a written application . . . to be filed 24 hours in advance of such parade, picket line or group demonstration . . .

(2) Refuse to issue such permit when the activity or purpose stated in the application would violate any ordinance of the city or statute of the state, or when the activity or purpose would endanger the public health or safety, or hinder or prevent the orderly movement of pedestrian or vehicular traffic on the sidewalks or streets of the city.

(3) Specify in the permit whether or not minors below the age of 18 years will be permitted to participate. The chief of police or, in his absence, the next highest ranking police officer of the city on duty shall pass upon whether or not minors below the age of 18 years shall be permitted to participate . . . and shall base his determination upon whether or not the purpose, time or

2

> place of the participation will be detrimental to or endanger the health, welfare or safety of said minors.

*Id.* § 18-178.

Moreover, the Ordinance provides that the Chief or other designated officer must, "among other considerations provided," find as a requisite before issuing any permit that the activity will not (1) "require excessive diversion of police from other necessary duties"; (2) "interfere with the right of property owners in the area to enjoy peaceful occupancy and use of their property"; or (3) "unreasonabl[y] interfere[] with normal vehicular or pedestrian traffic in the area, . . . prevent normal police or fire protection to the public, [or] . . . be likely to cause injury to persons or property or provoke disorderly conduct or create a public disturbance." *Id.* § 18-179.

If the Chief of Police grants the permit, he then has discretion to limit the protest or other gathering to "not more than six persons . . . [in] the entire width of [the] street or sidewalk within . . . 100 feet." *Id.* § 18-181. During a permitted protest, parade, demonstration, or picket, he has discretion to order individuals to disperse upon a violation of any of the terms of the permit. *Id.* § 18-176. If individuals fail to disperse, they may be subject to arrest under NC Gen. Stat. § 14-288.5.

The Ordinance also makes it illegal for any minor to be present at an expressive gathering without explicit permission from the Chief or other designated officer. It authorizes them to deny such permission upon their own determination that attending would be "detrimental to or endanger [the minor's] health, welfare or safety." Art. VI §§

18-177, 178. Each violation of the Ordinance is "punishable as a misdemeanor, subject to a fine not to exceed $500." Ch. 1 § 1-12.

In their Complaint and in declarations, Plaintiffs assert that they regularly attempt to exercise their First Amendment rights to protest, assemble, and associate in Graham. In particular, Plaintiffs describe recent efforts to protest institutionalized racism, police violence against Black people, and the continued presence of the Confederate monument in front of the Alamance County Historic Courthouse in Graham. Because of the Ordinance, however, Plaintiffs contend that their exercise of their First Amendment rights has been impermissibly burdened and restrained. The Court summarizes pertinent parts of Plaintiffs' allegations, as set forth in their sworn declarations, as follows:

Plaintiff Alamance County Branch of the National Association for the Advancement of Colored People ("NAACP") and its members seek to protest racialized police violence and the Confederate monument in Graham. Due to the Ordinance, NAACP asserts it has been forced to divert resources to assess, plan for, and educate its members about public assemblies and demonstrations in Graham, including by applying for a permit to protest the Confederate monument. NAACP says that it fears that its permit applications will be denied due to the viewpoint it and its members wish to express. In addition, because the Ordinance does not set forth a deadline by which Defendant Prichard or his designee must respond to an application, NAACP asserts that it fears that any approval or denial will issue too close in time to the planned protest for them to sufficiently publicize and plan the event. NAACP further states that some of its members plan to protest near the Confederate monument on July 4, but fear harassment and arrest when they do so.

Plaintiff Tamara O. Kersey, who is from Graham, asserts that she has attended vigils and rallies elsewhere in Alamance County to protest police brutality in the wake of the killing of George Floyd, but she has not protested in her hometown. She states that the Ordinance has placed her in fear of being sanctioned for doing so without a permit. Rather than forgo exercising her constitutional rights, she states that she has subjected herself to Graham's permit system, but is concerned that her request may be denied under the Ordinance's subjective standards, and also that the delay caused by waiting for the City's response will limit attendance and hinder her planned protest. She also plans to protest at the Confederate monument on July 4, 2020, despite fears she will be harassed or arrested.

Plaintiff Colleen Tenae Turner grew up in Alamance County and went to school in Graham. She asserts that she would like to be able to gather with others and protest there to raise her concerns with racism in Graham, to express support for Black lives, and advocate for removal of the Confederate monument. She sought a permit for a protest in Graham on June 27, 2020, but Graham Police Department Assistant Chief Kristy Cole denied her request in part because the protest might interfere with the orderly movement of individuals and with property owners' rights to "enjoy peaceful occupancy and use of their property," might divert excessive police from other necessary duties, and might "further enhance the fear and concerns that [local business owners] have." Following that denial, she sought a permit for a smaller gathering on that same day. Assistant Chief Cole denied that request as well, on the basis of a State of Emergency order that the City has since rescinded. Plaintiff Turner testifies that she intends to continue her attempts to organize permitted protests, but is concerned that the City will continue to stifle her efforts

and silence her voice. She would also like to be able to protest spontaneously at the monument this July 4, 2020.

Plaintiff Nerissa Rivera planned to attend the June 27, 2020 protest for which Ms. Turner sought a permit because she opposes the continued presence of the Confederate monument in downtown Graham, which she sees as a representation of murder, inequality, and racism. After learning that the City denied Ms. Turner's permit, Ms. Rivera decided to go to downtown Graham and protest by herself. While in Graham, she met a group of friends for lunch. As they were walking back to one woman's car, they were stopped by Graham police officers who told them they could not protest and that, if they started to protest, the officers would order them to leave. Plaintiff Rivera and her friends left briefly and then walked back along the same path. That time, the officers ordered them to disperse, though Plaintiff Rivera, who is Latina, asserts that the police allowed a group of white people with Confederate flags to congregate across the road. Plaintiff Rivera states that she would like to spontaneously protest with a small group on the public sidewalks near the monument in Graham this Fourth of July weekend, but is unable to do so due to the Ordinance's advance permit requirement.

Plaintiff Destiny Clarke lives near Graham and has sought to demonstrate in the City to protest white supremacy, support the Black Lives Matter movement, and oppose the Confederate monument near the Alamance Courthouse. On June 28, 2020, Plaintiff Clarke walked alone in downtown Graham, silently carrying a "Black Lives Matter" sign. As she neared the courthouse square, a City officer stopped her, told her that protesting is prohibited, and threatened to arrest her if she did not leave the area. Concerned that she

would be arrested for exercising her First Amendment rights, Plaintiff Clarke offered to throw away her sign, and subsequently did so. The officer then left. Ms. Clarke wants to continue protesting in Graham, but is reasonably concerned that she may be arrested or fined for doing so.

Plaintiff Terence Colin Dodd asserts that he approached the Confederate monument in front of the Alamance County Historic Courthouse around 6:00am on Saturday, June 27, 2020 with a poster that read "Black Lives Matter." He alleges that one of Defendant Sheriff Terry Johnson's deputies was in a squad car parked beside the monument at the crosswalk. As Plaintiff Dodd approached the monument with his sign, the deputy got out of the car, walked toward Plaintiff Dodd and ordered him to step back. Plaintiff Dodd asked the deputy to explain the ordinance or other legal authority that permitted him to prevent Plaintiff Dodd from demonstrating at the Confederate monument on the Historic Courthouse steps. According to Plaintiff Dodd, the deputy did not answer him, but instead called on his radio for backup. A half dozen squad cars and eight to ten Sheriff deputies subsequently arrived, causing Plaintiff Dodd to feel fearful. Graham police officers then arrived and told Plaintiff Dodd that he could not be on County property but could walk on the sidewalk across the street from the Confederate monument so long as he was alone, not with a group. Because he did not want to get arrested, Plaintiff Dodd obeyed the officers and the deputies and walked alone on the sidewalk with his sign until close to 10:00am, when he left.

Plaintiff Annie Simpson is a resident of Concord, North Carolina who asserts that she has sought to organize protests in downtown Graham at the Alamance Courthouse to

7

protest white supremacy, support the Black Lives Matter movement, and oppose the Confederate Monument situated there. On June 29, 2020, Plaintiff Annie Simpson called the GPD to inquire about how to apply for a permit to demonstrate at the Alamance County Historic Courthouse. Assistant Chief Cole informed Plaintiff Simpson that she would have to submit written permission from the Alamance County Manager's Office along with her application for demonstration permit in order to hold a permitted demonstration at the Historic Courthouse. That same day, Plaintiff Simpson called the Alamance County Manager's Office to inquire about the process of acquiring a permit to demonstrate at the Alamance County Historic Courthouse. Plaintiff Simpson says she was told by the County Manager's Office that no protests are allowed on courthouse grounds.

Plaintiff Adam Rose asserts that he became concerned about police and governmental overreaction to peaceful protests in Graham in early June 2020. On June 26, 2020 Plaintiff Rose filed an application for a permit to demonstrate at Historic Courthouse Square. Plaintiff Rose indicated he planned to attend with 5 others on June 28 for a two-hour period. On June 27, Plaintiff Rose was informed by Assistant Chief Cole that his permit had been denied, and that no permits would be issued for an indefinite period of time.

Plaintiff Gregory Drumwright grew up just outside the city limits of Graham, and still has family living there. He is a social justice activist and organizer, university professor and Senior Minister at the Citadel Church in Greensboro, North Carolina where he now lives. Although Plaintiff Drumwright subjected himself to Graham's permit system for a

8

racial justice demonstration at the Historic Courthouse square on July 11, the City Assistant Manager informed him that Defendant Peterman has disallowed the issuance of any permits for protests. Plaintiff Drumwright plans to go to the Courthouse square without seeking a permit on July 4, 2020 to peacefully protest with other community members.

On July 2, 2020, Plaintiffs filed a complaint under 42 U.S.C. § 1983 alleging that the Ordinance violates the First and Fourteenth Amendments to the United States Constitution. That same date, they filed a motion for a temporary restraining order and preliminary injunction.

## ANALYSIS

To obtain a temporary restraining order, Plaintiffs must demonstrate that they are likely to succeed on the merits of at least one of their claims; they are likely to suffer irreparable harm absent preliminary relief; the equities favor a temporary restraining order; and a temporary restraining order serves the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### I. **Likelihood of Success on the Merits**

Plaintiffs present three arguments: (1) The Ordinance is a content-based restriction that does cannot survive strict scrutiny; (2) the Ordinance is an impermissible prior restraint on speech; (3) the Ordinance's restrictions excessively burden speech and are not reasonable time, place, and manner restrictions, and (4) the Ordinance is void for vagueness under the Due Process Clause.

The Court finds Plaintiffs likely to succeed on all four of these claims.

### A. **Content-based restriction**

9

The First Amendment prohibits the government from "defin[ing] regulated speech by its function or purpose." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). A law is "content-based [if] it applie[s] or [does] not apply as a result of content, that is, 'the topic discussed or the idea or message expressed.'" *Cent. Radio Co. Inc. v. City of Norfolk,* 811 F.3d 625, 633 (4th Cir. 2016) (quoting *Reed*, 576 U.S. at 163). "[T]he Constitution demands that content-based restrictions on speech be presumed invalid and that the Government bear the burden of showing their constitutionality," *Ashcroft v. Am. Civil Liberties Union,* 542 U.S. 656, 660 (2004) (internal citations omitted), by establishing that "the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Reed*, 576 U.S. at 171.

Here, the Ordinance is content-based. The Ordinance specifically regulates those who assemble "for the purpose of protesting." Chapter 18, Art. VI § 18-172. And it expressly exempts funeral processions, students going to educational activities, and government agencies. *Id.* § 18-173. Therefore, the Ordinance must survive strict scrutiny. The Court finds that it likely does not. The text of the Ordinance shows it is aimed at limiting protest. *See, e.g., id.* § 18-172 (defining "group demonstration" specifically to include those "protesting any matter"). That is not a legitimate, let alone compelling, government interest.

Even if the City's interest in the Ordinance were compelling, the ban on any protest, assembly, and parades by any individual or group anywhere in the City without a permit would violate the Constitution because it is not narrowly tailored. As the Supreme Court

10

has recognized, a total ban on expression on public sidewalks does not substantially serve any government purpose. *See United States v. Grace,* 461 U.S. 171, 182 (1983).

The Fourth Circuit's opinion in *Cox v. City of Charleston* is instructive. There, the court struck down a city ordinance similar to this one on First Amendment grounds. The ordinance made it illegal to "organize, hold or participate in any parade, meeting, exhibition, assembly, or procession . . . on the streets or sidewalks of the city" without a permit. 416 F.3d 281, 283 (4th Cir. 2005). While recognizing that "it may be true that the permit requirement succeeds in mitigating the potential of any of the activities listed in the Ordinance to threaten the safety, order, and accessibility of city streets and sidewalks," the Fourth Circuit held that "it does so at too high a cost, namely, by significantly restricting a substantial quantity of speech that does not impede the City's permissible goals." *Id.* at 285 (alterations, marks, and citation omitted). Recognizing this lack of tailoring, the Fourth Circuit held "that the Ordinance 'burden[s] substantially more speech than is necessary to further the government's legitimate interests,' and therefore facially violates the First Amendment." *Id.* (*Ward v. Rock Against Racism*, 491 U.S. 781, 799 (1989)). The court also held that "the unflinching application of the Ordinance to groups as small as two or three renders it constitutionally infirm" and that "[s]pontaneous expression, which is often the most effective kind of expression, is prohibited by the Ordinance," *id.* at 285–86 (alterations omitted).

Here, the Graham Ordinance appears to share those constitutional infirmities, which highlight the lack of sufficient tailoring. Accordingly, the Court finds it likely that the Ordinance violates the Constitution as a content-based restriction on speech.

11

## B. Prior restraint

While the Supreme Court has approved reasonable permit requirements for large demonstrations, *Cox v. New Hampshire*, 312 U.S. 569, 574 (1941), "any system of prior restraints" bears "a heavy presumption against its constitutional validity." *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963). "An ordinance that requires individuals or groups to obtain a permit before engaging in protected speech is a prior restraint on speech" and "the City bears the burden of proving its constitutionality." *Cox v. City of Charleston*, 416 F.3d 281, 284 (4th Cir. 2005) (internal citations omitted).

"[A] law subjecting the exercise of First Amendment freedoms to the prior restraint of a license, without narrow, objective, and definite standards to guide the licensing authority, is unconstitutional." *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150-51 (1969). "It is settled [. . .] than an ordinance which [. . .] makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional [. . .] prior restraint." *Staub v. City of Baxley*, 355 U.S. 313, 322 (1958)). Applying this standard in *Shuttlesworth*, the Supreme Court invalidated an Alabama law that, much like the Ordinance, required a permit for "any parade or procession or other public demonstration." 394 U.S. at 149. There, much like here, the licensing authority could deny a permit if in "its judgment, the public welfare, peace, safety, health, decency, good order, morals or convenience require that it be

refused." *Id.* at 149-50. The Court held that this gave the administrator "virtually unbridled and absolute power." *Id.* at 150.

Here, the Graham Ordinance requires a permit for any "parade, picket line or group demonstration" gathering "for the purpose of protesting any matter." Ch. 18, Art. VI §§ 18-172, 175. The Police Chief has discretion to deny a permit if it endangers "the public health or safety," hinders "orderly movement of pedestrian or vehicular traffic," *id.* § 18-178(2), or is likely to "create a public disturbance," *id.* § 18-179(3). Moreover, the Police Chief may limit gatherings to six people in areas with "normally heavy pedestrian or vehicular traffic," or set another higher number if "in his judgment, conditions permit" it. *Id.* § 18-181. The Ordinance does not provide notice for how long the permit review process will take or to require the government to provide a justification when a permit is denied.

Plaintiffs argue that the Ordinance invites discriminatory enforcement against disfavored views by authorizing the Police Chief to deny a permit where, in their judgment, a proposed assembly will "require excessive diversion of police from other necessary duties," without any objective standards. Plaintiffs further argue that this provision allows the government to suppress views that officials fear will draw large crowds either of supporters or counter-demonstrators, and they plausibly contend that they have in fact been threatened and prohibited from protesting because of their support for racial justice and equality. Accordingly, the Court finds it likely that the Ordinance places a prior restraint on free speech in violation of the First Amendment.

**C. Excessive Burdening of Protected Speech**

The Court agrees with Plaintiffs that the Ordinance also likely violates the First Amendment by burdening Plaintiffs' speech with restrictions on their rights to gather and protest publicly that are not reasonable "time, place, and manner" restrictions. The Ordinance regulates speech in traditional public forums such streets, sidewalks, and parks. These places have "immemorially been held in trust for the use of the public and, time out of mind, have been used for purposes of assembly, communicating thought between citizens, and discussing public questions." *Hague v. Comm. for Indust. Org.*, 307 U.S. 496, 515 (1939). In such spaces, the government may only impose "reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions 'are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information.'" *Ward*, 491 U.S. at 791 (quoting *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984)).

"To prove that a content-neutral restriction on protected speech is narrowly tailored to serve a significant governmental interest . . . the government is obliged to demonstrate that it actually tried or considered less-speech-restrictive alternatives and that such alternatives were inadequate to serve the government's interest." *Billups v. City of Charleston*, 961 F.3d 673, 688 (4th Cir. 2020). "Absent such a showing, [courts] cannot simply accept the City's assurances that those other ordinances would be too difficult to enforce or would not sufficiently safeguard its interest." *Id.* at 689. "Rather than enforcing a prior restraint on protected expression, cities can enforce ordinances prohibiting and punishing conduct that disturbs the peace, blocks the sidewalks, or impedes the flow of

14

Case 1:20-cv-00613-CCE-LPA   Document 2-10   Filed 07/02/20   Page 14 of 20

traffic." *Cox*, 416 F.3d at 286. "Cities can also pass ordinances that 'regulate only the volume, location, or duration of [protected] expression,' rather than subjecting all speech to a permit requirement." *Id.* (quoting *Community for Creative Nonviolence v. Turner*, 893 F.2d 1387, 1393 (D.C. Cir. 1990)). "At bottom, the legislative body can enact a permit requirement that burdens expression only to the extent necessary to effectuate the city's significant interests, and no more so." *Id.* at 287.

Here, as noted above, the Ordinance is not narrowly tailored to serve a significant government interest. The Ordinance presumptively bans all protest and assembly absent government permission everywhere in the City, without any attempt to tailor the restriction to, for example, the level of traffic in a particular place. And because the Ordinance prohibits any expressive assembly or parade anywhere in the City without 24 hours advance notice to and permission from Defendants—and allow the City police to "establish lines for separation of the general public from [protest] activity," thereby impermissibly removing land from traditional public forum status at their whim—it does not provide alternative channels for communication. Finally, because the Ordinance allows the Chief to limit gatherings to six people for every hundred feet, it functionally bars any mass protest or assembly.

Plaintiffs are likely to prevail on their claim that the Ordinance excessively burdens their speech in violation of the First Amendment.

### D. Void for vagueness

"It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108

(1972). Due process requires clarity in statutes and ordinances for two reasons. First, a vague law "fails to give ordinary people fair notice of the conduct it punishes," *Johnson v. United States*, 135 S. Ct. 2551, 2556 (2015), and second, it invites "arbitrary and discriminatory application" by failing to provide "explicit standards for those [government actors] who apply [it]." *Grayned*, 408 U.S. at 108-09. This principle applies to administrative, civil, and criminal prohibitions. *See, e.g.*, *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253–54 (2012) (civil fines); *Gentile v. State Bar*, 501 U.S. 1030, 1048–51 (1991), (state bar rule); *United States v. Hoechst Celanese Corp.*, 128 F.3d 216, 224 (4th Cir. 1997) (environmental regulations).

Where First Amendment rights are at stake, it is especially important that laws are clear. *See Fox Television Stations, Inc.*, 567 U.S. at 253–54. Vague laws threaten to chill speech because they "inevitably lead citizens to steer far wider of the unlawful zone." *Grayned*, 408 U.S. at 109 (quotation marks and citation omitted). Moreover, clarity is required "based in part on the need to eliminate the impermissible risk of discriminatory enforcement, for history shows that speech is suppressed when either the speaker or the message is critical of those who enforce the law." *Gentile*, 501 U.S. at 1051 (citations omitted).

The Supreme Court has repeatedly held that laws that turn on terms such as "disturbing the peace" are void for vagueness. In *Cox v. Louisiana*, the Supreme Court declared unconstitutional a statute that prohibited "congregating with others with intent to provoke a breach of the peace, or under circumstances such that a breach of the peace may be occasioned." 379 U.S. 536, 551 (1965) (marks and citation omitted). Breach of the peace

16

statutes are impermissibly vague because they condition legality on the reaction of the speakers' critics, making it impossible for speakers to predict whether they will be punished for their constitutionally protected speech. *See id.* at 552.

Fifty years ago, the District Court for the Eastern District of North Carolina struck down another North Carolina city ordinance that was nearly identical to the Ordinance at issue here as void for vagueness. *Underwood v. City Council of Greenville*, 316 F. Supp. 956 (E.D.N.C. 1970). In that case, the ordinance read:

> [T]he chief of police . . . may refuse to issue a permit to march, parade, assemble, picket or demonstrate in any way when and if he determines that said activity would either constitute a clear and present danger to the public health or safety or would 'hinder or prevent the orderly movement of pedestrian or vehicular traffic on the streets, alleys, or sidewalks.' Further the chief or his designee may specify whether or not minors will be allowed to participate . . .
>
> [A]mong other considerations, [the chief may] consider and find as a requisite to issuance the following:
>
> > (1) the activity will not require excessive diversion of police from other necessary duties;
> >
> > (2) the activity will not interfere with the right of property owners in the area to enjoy peaceful and lawful occupancy and use of their property;
> >
> > (3) the activity can be conducted without unreasonable interference with normal pedestrian or vehicular traffic in the area, and will not prevent normal police and fire protection to the public, and will not be likely to cause injury to persons or property or to provoke disorderly conduct or to create a public disturbance.

*Id*. at 960. The court held that it was "[c]lear[]" that this law—which is nearly identical to the Ordinance—was unconstitutionally vague because it failed to give notice as to what is considered a permissible assembly, and it failed to cabin the police chief's discretion. *Id.*

Here, neither the Police Chief nor Plaintiffs can know whether their acts will provoke disorderly conduct or create a public disturbance. Like the ordinance declared void for vagueness in *Underwood*, the Ordinance enables the Chief of Police to "[r]efuse to issue [a] permit . . . when the activity or purpose would endanger the public health or safety," Chapter 18, Art VI § 18-178(2), and permits are allowed only when the protest "will not interfere with the right of property owners in the area to enjoy peaceful occupancy" and "will not be likely to cause injury to persons or property or provoke disorderly conduct or create a public disturbance." *Id.* § 18-179(2)–(3). As in *Cox* and *Underwood*, it is unclear how speakers or the Police Chief will know whether a demonstration will be likely to create a public disturbance or provoke disorderly conduct.

For these reasons, the Court concludes that Plaintiffs are likely to succeed on their Due Process claim as well.

## II. Irreparable Injury

"[L]oss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976). As the Court finds Plaintiffs likely to prevail on their First Amendment claims, the Court finds them likely to suffer irreparable injury as well. Plaintiffs' injury is particularly imminent and immediate preliminary injunctive relief is necessary because several Plaintiffs state that they intend to protest this weekend and fear being unable to lawfully

18

Case 1:20-cv-00613-CCE-LPA   Document 2-10   Filed 07/02/20   Page 18 of 20

protest or threatened with arrest if they do so without a permit. For these reasons, the Court finds it appropriate to issue this Order immediately and without notice to Defendant.

### III. Balance of Equities and the Public Interest

While Plaintiffs will likely suffer irreparable injury without preliminary relief, Defendants will not be harmed by issuance of a TRO. *See Giovani Carandola, Ltd. v. Bason,* 303 F.3d 507, 521 (4th Cir. 2002) (injunction of a likely unconstitutional law does not harm the state). Furthermore, the Fourth Circuit has held that upholding constitutional rights "surely serves" the public interest. *Id.* Plaintiffs have therefore satisfied these factors.

## CONCLUSION

Plaintiffs' motion for a temporary restraining order is GRANTED. Defendants are hereby RESTRAINED from enforcing the Ordinance. In the Court's discretion, the bond requirement under Rule 65(c) is waived.

This Order shall be in effect for 14 days. The Court will continue to review Plaintiffs' Motion for a Preliminary Injunction and will set a hearing prior to the expiration of this Order as it deems appropriate. Pursuant to Fed. R. Civ. P. 65(d)(2), Plaintiffs shall provide Defendants with notice of this Order and Defendants shall immediately provide Notice to their officers, attorneys, agents, employees, and other persons who are in active concert or participation with them.

This the ___ day of July, 2020, at _____ AM/PM

_____
UNITED STATES DISTRICT JUDGE