IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

NATIONAL ASSOCIATION FOR THE )
ADVANCEMENT OF COLORED PEOPLE, et al., )
)
        Plaintiffs, )
)
        v. )    1:20-CV-613
)
JERRY PETERMAN, et al., )
)
        Defendants. )
_____ )

## CONSENT TEMPORARY RESTRAINING ORDER

Plaintiffs Alamance County Branch of the National Association for the Advancement of Colored People ("NAACP"), Tamara O. Kersey, Carleen Tenae Turner, Terence Colin Dodd, Destiny Clarke, Annie Simpson, Nerissa Rivera, Adam Rose, and Gregory Drumwright, have moved pursuant to Fed. R. Civ. P. 65 and LR 65.1 for a temporary restraining order and a preliminary injunction restraining enforcement of Chapter 18, Art. VI, Sections 18-172 and 18-174 through 181 of the City of Graham ("City"), North Carolina's Code of Ordinances ("the Ordinance"). Among other things, the Ordinance makes it unlawful for any person to gather with anyone else "for the purpose of protesting" or "making known any position or thought" anywhere in the City without first obtaining the Chief of Police's permission at least 24 hours in advance. Plaintiffs argue that the Ordinance violates the First and Fourteenth Amendments to the United States Constitution.

1

After review of the declarations, documentary evidence, briefing submitted by Plaintiffs, the response of Defendants Jerry Peterman, Frankie Maness, Chip Turner, Melody Wiggins, Jennifer Talley, Ricky Hall and Jeffrey Prichard (hereafter collectively referred to as "Graham Defendants") that they do not oppose the entry of a temporary restraining order pending further orders of the Court, and the parties' Joint Motion for Consent Temporary Restraining Order, which sets forth, among other things, that the Graham defendants and Defendant Sheriff Terry S. Johnson agrees to the same, the Court hereby **GRANTS** the joint motion for a temporary restraining order as to the Graham ordinance referenced in the complaint existing as of July 2, 2020.

## BACKGROUND

The Ordinance provides that "[n]o parade, picket line or group demonstration is permitted on the sidewalks or streets of the city unless a permit therefor has been issued by the city." Chapter 18, Art. VI. § 18-175. It defines group demonstration as "any assembly together or concert of action between two or more persons for the purpose of protesting any matter or making known any position or thought of the group or of attracting attention thereto," parade as "any parade, march, ceremony, show, exhibition or procession of any kind in or upon the public streets, sidewalks, parks or other public places," and picket line as "any persons formed together for the purpose of making known any position or promotion of said persons or on behalf of any organization." *Id.* § 18-172.

To enforce the Ordinance, the Chief of Police is authorized to:

> (1) Require a written application . . . to be filed 24 hours in advance of such parade, picket line or group demonstration . . .

(2) Refuse to issue such permit when the activity or purpose stated in the application would violate any ordinance of the city or statute of the state, or when the activity or purpose would endanger the public health or safety, or hinder or prevent the orderly movement of pedestrian or vehicular traffic on the sidewalks or streets of the city.

(3) Specify in the permit whether or not minors below the age of 18 years will be permitted to participate. The chief of police or, in his absence, the next highest ranking police officer of the city on duty shall pass upon whether or not minors below the age of 18 years shall be permitted to participate ..
. and shall base his determination upon whether or not the purpose, time or place of the participation will be detrimental to or endanger the health, welfare or safety of said minors.

*Id.* § 18-178.

Moreover, the Ordinance provides that the Chief or other designated officer must, "among other considerations provided," find as a requisite before issuing any permit that the activity will not (1) "require excessive diversion of police from other necessary duties"; (2) "interfere with the right of property owners in the area to enjoy peaceful occupancy and use of their property"; or (3) "unreasonabl[y] interfere[] with normal vehicular or pedestrian traffic in the area, . . . prevent normal police or fire protection to the public, [or] . . . be likely to cause injury to persons or property or provoke   disorderly conduct or create a public disturbance." *Id.* § 18-179.

If the Chief of Police grants the permit, he then has discretion to limit the protest or other gathering to "not more than six persons . . . [in] the entire width of [the] street or sidewalk within . . . 100 feet." *Id.* § 18-181. During a permitted protest, parade, demonstration, or picket, he has discretion to order individuals to disperse upon a violation of any of the terms of the permit. *Id.* § 18-176. If

individuals fail to disperse, they may be subject to arrest under NC Gen. Stat. § 14-288.5.

The Ordinance also makes it illegal for any minor to be present at an expressive gathering without explicit permission from the Chief or other designated officer. It authorizes them to deny such permission upon their own determination that attending would be "detrimental to or endanger [the minor's] health, welfare or safety." Art. VI § 18-178. Each violation of the Ordinance is "punishable as a misdemeanor, subject to a fine not to exceed $500." Ch. 1 § 1-12. Defendants Prichard and Johnson both enforce criminal statutes.

In their Complaint and in declarations, Plaintiffs assert that they regularly attempt to exercise their First Amendment rights to protest, assemble, and associate in Graham. In particular, Plaintiffs describe recent efforts to protest institutionalized racism, police violence against Black people, and the continued presence of the Confederate monument in front of the Alamance County Historic Courthouse in Graham. Because of the Ordinance, however, Plaintiffs contend that their exercise of their First Amendment rights has been impermissibly burdened and restrained.

On July 2, 2020, Plaintiffs filed a complaint under 42 U.S.C. § 1983 alleging that the Ordinance violates the First and Fourteenth Amendments to the United States Constitution. They also filed a motion for a temporary restraining order and preliminary injunction. On July 5, 2020, the Graham Defendants filed a response indicating they did not oppose entry of a temporary restraining order. On July 5, 2020, the parties jointly moved for a consent temporary restraining order

enjoining the Graham Defendants and Defendant Johnson.

## ANALYSIS

To obtain a temporary restraining order, Plaintiffs must demonstrate that they are likely to succeed on the merits of at least one of their claims; they are likely to suffer irreparable harm absent preliminary relief; the equities favor a temporary restraining order; and a temporary restraining order serves the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

### I. Likelihood of Success on the Merits

Plaintiffs challenge the Ordinance on First Amendment grounds because: (1) the Ordinance is a content-based restriction that cannot survive strict scrutiny; (2) the Ordinance is an impermissible prior restraint on speech; and (3) the Ordinance's restrictions excessively burden speech and are not reasonable time, place, and manner restrictions. Plaintiffs also challenge the Ordinance on Fourteenth Amendment grounds because the Ordinance is void for vagueness under the Due Process Clause. The Court finds Plaintiffs are likely to succeed on their First and Fourteenth Amendment claims.

### II. Irreparable Injury

"[L]oss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976). As the Court finds Plaintiffs likely to prevail on their First and Fourteenth Amendment claim, the Court finds them likely to suffer irreparable injury as well. Plaintiffs' injury is particularly imminent and immediate preliminary injunctive relief is necessary because several Plaintiffs state that they intend to protest in the

near future. For these reasons, the Court finds it appropriate to issue this Order.

## III. Balance of Equities and the Public Interest

Plaintiffs will suffer irreparable injury without preliminary relief. The Graham Defendants concede that they will less likely be harmed by issuance of a TRO. The equities therefore weigh in favor of an injunction. *See Giovani Carandola, Ltd. v. Bason,* 303 F.3d 507, 521 (4th Cir. 2002) (injunction of a likely unconstitutional law does not harm the state). Furthermore, the Fourth Circuit has held that upholding constitutional rights "surely serves" the public interest. *Id.* Plaintiffs have therefore satisfied these factors.

## CONCLUSION

Plaintiffs' motion for a temporary restraining order is **GRANTED**. The Graham Defendants and Defendant Johnson are hereby **RESTRAINED** from enforcing the Ordinance and the Ordinance shall have no force or effect pending further orders of the Court.

In the Court's discretion, the bond requirement under Rule 65(c) is waived.

This Order shall be in effect for 14 days. Pursuant to Fed. R. Civ. P. 65(d)(2), Plaintiffs shall provide Defendants with notice of this Order and Defendants shall immediately provide Notice to their officers, attorneys, agents, employees, and other persons who are in active concert or participation with them.

The Court will continue to review Plaintiffs' Motion for a Preliminary Injunction, and a hearing on that motion will be held by the undersigned on July 20, 2020 at 9:00 a.m.

This the 6th day of July, 2020.

_____
UNITED STATES DISTRICT JUDGE