IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
Case No. 1:20- CV-613-CCE-LPA

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, Alamance County Branch; TAMARA O. KERSEY; COLLEEN TENAE TURNER; TERENCE COLIN DODD; DESTINY CLARKE; NERISSA RIVERA; ADAM ROSE; ANNIE SIMPSON; GREGORY B. DRUMWRIGHT,<br><br>Plaintiffs,<br><br>v.<br><br>JERRY PETERMAN, in his official capacity as Mayor of the City of Graham, North Carolina; FRANKIE MANESS, in his capacity as Graham City Manager; CHIP TURNER, in his official capacity as Mayor Pro-Tem of the City of Graham; MELODY WIGGINS, JENNIFER TALLEY, and RICKY HALL, in their capacities as Graham City Council Members; JEFFREY PRICHARD in his official capacity as Chief of the Graham Police Department; TERRY S. JOHNSON, in his official capacity as Sherriff of Alamance County; EDDIE BOWSWELL, STEVE CARTER, BUILL LASHLEY, AMY SCOTT GALEY and TIM SUTTON, in their official capacities as Alamance County Commissioners; BRYAN HAGOOD, in his official capacity as Alamance County Manager,<br><br>Defendants. | DECLARATION OF KRISTI COLE |

Declarant states as follows:

1. I, Kristi Cole, am a resident of North Carolina, am above the age of eighteen years, and am not subject to any legal disabilities. I make the following statements on my personal knowledge.

2. I am the Assistant Chief of Police for the City of Graham Police Department and am currently serving in the role of Chief while our Chief is on administrative leave.

3. I am currently the acting Chief of Police for the City of Graham Police Department.

4. The City of Graham Police Department ("GPD") employs 38 full time officers.

5. The GPD currently holds Advanced Law Enforcement accreditation from the Commission on Accreditation of Law Enforcement Agencies ("CALEA"), which is the highest possible accreditation standard.

6. Since the death of George Floyd in May 2020, Graham has seen a dramatic increase in the number of organized protests, parades, and demonstrations.

7. Until July 15, 2020, the GPD was involved in the issuance of permits to applicants seeking to organize protests, parades, or public demonstrations within the City of Graham.

8. Pursuant to the now rescinded Graham City Ordinance Sec. 18-178, the GPD could refuse to issue a permit if "the activity or purpose stated in the application would violate any ordinance of the city or statute of the state, or when the activity or purpose would endanger the public health or safety, or hinder or prevent the orderly movement of pedestrian or vehicular traffic on the sidewalks or streets of the city."

9. Since May, and while Graham City Ordinance Sec. 18-178 was still in effect, the following protests, parades, or public demonstrations received permits:

    a. Unity March was held on June 8, 2020.

    b. Walk for Equality was held on June 19, 2020.

    c. Black Lives Matter demonstration was held on June 30, 2020.

    d. Walk for Equality was held on July 1, 2020.

    e. ACSO Sit-in was held on July 9, 2020.

    f. All Lives Matter demonstration was held on July 11, 2020. A counter-protest event also titled All Live Matters was also held of July 11, 2020.

The last two of these events were not technically "permitted." Applications had been received, but the first consent TRO was in place suspending the permitting ordinance, so no permits were issued.

10. Since May, and while City of Graham Ordinance Sec. 18-178 was still in effect, the following protests, parades, or public demonstrations were held, even though they did not receive permits:

    a. The Demand Justice demonstration was held on June 5, 2020.

    b. The Monument v. BLM demonstration was held on June 20, 2020.

    c. An "unknown" demonstration was held on June 25, 2020, which was not organized by an identifiable entity.

    d. The Rally on Graham BLM Vigil was held June 27, 2020.

    e. Protest ACSO was held on June 28, 2020.

11. The following protests occurred after City of Graham Ordinance Sec. 18-178 was repealed:

  a. Forward Motion Alamance Voter Registration and Protest was held on July 20, 2020.

  b. Prayer in the Park was held on July 23, 2020.

  c. One Voice One Movement Vigil was held on July 25.

  d. Forward Motion Alamance Protest was held on July 28, 2020

 12. GPD understands that a Forward Motion Alamance protest is scheduled for August 3, 2020.

 13. The safety of demonstrators and the public at large is GPD's primary concern. GPD considers all available intelligence and data when developing a plan to support protestors and ensure public safety.

 14. The recent demonstrations have primarily been conducted in downtown Graham, in front of the Historic Alamance County Courthouse, and the Confederate monument situated directly to the north of the courthouse. Courthouse and surrounding property is owned and controlled by Alamance County. The monument is not owned by the City of Graham and is also under the control of Alamance County. GPD does not patrol or otherwise regulate what occurs on county property (to include the monument).

 15. GPD has no policy or directives regarding demonstrators accessing county property. The Alamance County Sheriff's Office is charged with policing courthouses and other county property. The Alamance County Sheriff claims the sidewalks surrounding the Historic Alamance County Courthouse are county property and has been policing the property accordingly.

16. Protests in and around the Monument and Courthouse do, however, raise broader concerns. This location creates several public safety issues, which we have attempted to address in order to safely conduct a demonstration, primarily the obstruction of roads and walkways.

17. The Historic Alamance County Courthouse is a working courthouse, and business is conducted in the building Monday through Friday. The courthouse is encircled by an active public thoroughfare, Court Square roundabout, which carries traffic in and out of downtown Graham. The courthouse is surrounded by small "lawns" which abut Court Square roundabout. A true an accurate image of the Historic Alamance County Courthouse and surrounding areas is copied below.



18. The Confederate monument is situated within Court Square roundabout, in the thoroughfare. A small, decorative, chain fence surrounds the flower bed at the base of the monument. Traffic utilizing Court Square roundabout pass within 3-5 feet of the edge of the

5

flower bed at the base of the monument. With the exception of the pedestrian crosswalk leading from the courthouse, past the monument, to North Main Street, the entire area around the monument is reserved for vehicular traffic.

19. Downtown Graham is home to multiple restaurants, ice cream parlors, coffee shops, barber shops, and a movie theatre, which create a significant amount of pedestrian traffic on the sidewalks of downtown Graham.

20. Recent demonstrations have elected to gather in front of the Historic Alamance County Courthouse. There is not a public venue in that area large enough to accommodate the crowd size of recent demonstrations without impeding vehicle or foot traffic. Unless there is an approved road closure all of Court Square Drive remains open to traffic. With advance notice and coordination, GPD has restricted vehicle access to Court Square roundabout, Main Street, and Elm Street to accommodate demonstrations. On July 11th, 2020 the south side of Court Square remained open to traffic while the north side was closed to create a safety barrier between vehicle traffic and the protest area.

21. Closing vehicle access to downtown Graham requires approximately eight officers to barricade roads and redirect traffic. Further, vehicle traffic is unable to reach downtown businesses while the demonstration is ongoing.

22. When a public demonstration is held, and vehicle traffic is restricted in a designated area, a primary public safety concern is that demonstrators will venture away from protected area and into an unrestricted thoroughfare, creating the potential for a vehicle/pedestrian accident. GPD commonly uses traffic barricades, cones, and patrol vehicles to indicate areas where traffic is restricted.

6

23. Since March, and the onset of the coronavirus, maintaining adequate staffing levels has been a challenge for GPD. We have experienced multiple personnel issues and issues related to the coronavirus which have reduced the number of available GPD officers.

24. GPD is a relatively small department, so when large events are planned, such as the All Lives Matter demonstrations on July 11, 2020, GPD typically requests additional staffing from surrounding police departments. Several departments assisted with the July 11 demonstration.

25. To illustrate this point further, on a typical Saturday evening, GPD might have only four officers on duty. The organized demonstrations that the City of Graham has hosted since May, have varied in size from tens of people, to about one thousand people. Without supplementing the number of officers on duty, a large demonstration has the ability to quickly exceed GPD's ability to manage traffic, keep the peace, ensure the safety of demonstrators, and respond to service calls.

26. Approximately 520 demonstrators and counter demonstrators attended the July 11, All Lives Matter demonstration. A contingent comprised of approximately 90 law enforcement officers from GPD, Alamance County Sherriff's Department, and the Burlington Police Department worked the event. Burlington Police handled all 911 calls for service from the community during the event. The event was adequately staffed and there were no significant reported injuries.

27. GPD's staffing levels have been further affected by the coronavirus and Covid-19 related illness. Between June 18, 2020 and July 10, 2020 six members of the GPD tested positive for Covid-19. The combination of officers being either sick and/or quarantined significantly

7

Case 1:20-cv-00613-CCE-LPA Document 52 Filed 07/30/20 Page 7 of 13

reduced GPD's operational capacity. At one point, an entire GPD platoon was unavailable for duty.

28. In order to cover the staffing gaps created by sick and / or quarantined officers, officers from other platoons took additional shifts. GPD's service capacity was reduced by an estimated 42% between June 18, 2020 and July 10, 2020.

29. Over the past several months, I have grown increasingly concerned about the number of hours my officers have been required to work and the potential for my officers to suffer a fatigue related injury.

30. Between May 30 and June 8, the Raleigh Police Department officers accrued nearly 2,350 overtime hours supporting Black Lives Matter Protests.[1] Since May, the GPD has accrued approximately 1,099.41 overtime hours responding to demonstrations. (This does not include hours related to outside agencies present to assist under mutual aid)

31. GPD's ability to appropriately staff demonstrations became even more critical after reports of similar demonstrations across our country becoming violent and destructive.

32. In Raleigh, from May 30 – June 1, Black Live Matters protests became violent, resulting in property destruction and looting.[2] The National Guard deployed, and Raleigh imposed a curfew.

33. On May 30th, demonstrations in Greensboro also turned violent resulting in vandalization and rocks being thrown at officers. Greensboro Police Chief Brain James stated

---

[1] https://www.wral.com/law-enforcement-spent-2-2m-on-black-lives-matter-protests-in-raleigh/19170546/
[2] https://www.newsobserver.com/article243265481.html

that instigators from "outside the community" caused what was a peaceful protest to become violent. Greensboro also implemented a curfew.[3]

34. Similarly, Fayetteville reported violence and looting associated demonstrations occurring at the end of May 2020.[4]

35. Again, GPD's priority is to ensure that demonstrations remain safe and that they and do not devolve into rioting and looting, due to outside influencers, or otherwise.

36. Like demonstrations in other cities, demonstrations in Graham carried a high risk of violence and or lawlessness.

37. Prior to issuing a State of Emergency order on July 10, GPD received intelligence indicating that the two groups planning to protest on July 11th were antagonistic to one another.

38. GPD intelligence further indicated that a pro-Confederate monument group planned to attend the July 11th demonstration for the purpose of protecting the Confederate monument from the All Lives Matter Protest. Intelligence suggests that the counter-protestors would bring weapons to the event.

39. Exhibit A attached hereto, contains social media posts indicating that counter-protestors planned to bring weapons to the July 11th event and that some might employ a "shoot first ask questions" later approach if the demonstration were to become unruly. Additionally, the attached postings represent confrontation seeking behavior between opposing positions. It is unclear whether the all the individuals in the posts attended the July 11 event.

40. The July 10 City of Graham State of Emergency order ("SOE") contained only two limitations on the conducts of citizens and visitors to the city of Graham.

---

[3] https://greensboro.com/news/local_news/watch-now-greensboro-police-chief-says-second-wave-of-protesters-from-outside-the-community-drove/article_63707cb9-2910-5e9e-9563-11e991e09f4a.html
[4] https://www.fayobserver.com/news/20200601/protesters-fayetteville-police-stand-face-to-face-before-reaching-solidarity

41. First, the SOE made it unlawful to "disobey any barriers, warning signs or other structures that restrict vehicular or pedestrian travel due to road closure, detours and/or hazardous conditions."

42. GPD supported this restriction as large crowds were anticipated for the July 11th All Lives Matter event. Requiring demonstrators to abide by public safety barriers and warning signs was necessary to 1) ensuring that the demonstration would not sprawl into areas of unrestricted traffic flow or onto to private property, and 2) allowing GPD to more effectively concentrate its already thinly spread officer force on the demonstration area in order to ensure the safety of protestors and counter-protestors.

43. Second, the SOE prohibited the use of weapons and substances as defined in N.C.G.S 14-288.1. Again, GPD supported this restriction as a necessary measure for mitigating the potential for violence, especially since we had already received reports of individuals planning to bring weapons to the protest.

44. The recent demonstrations have largely proceeded without incident. However, on June 2nd, GPD officers arrested two pro-Confederate monument protestors for simple assault and disorderly conduct.

45. Alamance County Sherriff's Office has made additional arrests related to the demonstrations, but I am unaware of the specifics of each arrest.

46. I am familiar with the arrest of Mr. Dexter McCoy. Mr. McCoy was helping setup the stage at the July 11, All Live Matter demonstration. Mr. McCoy needed to retrieve something from his vehicle. A GPD officer, Sergeant Payne escorted Mr. McCoy across the safety zone to his vehicle with instructions to return the same way so GPD could escort him safely back. Mr. McCoy did not return the same way and was later arrested by an Alamance County Deputy. GDP

spoke with the Alamance County District Attorney's Office, and charges against Mr. McCoy were dropped.

47. On July 20, 2020 GPD received information that Forward Motion Alamance wanted to set up a table for voter registration outside the Alamance County Commissioner's Meeting. GPD set up an area, as requested by Carey Kirk Griffin, for this activity. This turned into a protest in reference to the Alamance County Sheriff's Office and the Confederate Monument. Participants in this protest used a bull horn and blew horns on vehicles in an attempt to disrupt the County Commissioner's Meeting.

48. On July 25th, during the One Voice One Movement Vigil, GPD received a reports of a caravan of approximately 50 vehicles traveling towards the Historic Alamance County Courthouse. Officer Denny observed the first 3 or 4 of the cars in the caravan proceed through a red light and onto Main Street, causing the opposite traveling traffic with a green light to stop. GDP Officer Denny stopped the last car and spoke with the driver. The driver informed Officer Denny that they were in a "parade" associated with the demonstration. Although no parade had been organized through the City of Graham, GPD allowed the vehicles to proceed. Eventually the caravan created standstill traffic around the on Court Square roundabout. GPD directed traffic and resolved the traffic congestion without issuing a citation.

49. On July 28th, GPD officers received reports of demonstrator's spray painting sidewalks in Graham. GPD Officer Way approached an individual identified as Ms. Carey Griffin who was holding a canister of what appeared to be spray paint. Before Officer Way could determine the canister held spray chalk or spray paint, he was aggressively approached and surrounded by other demonstrators. Unsure about the crowd's intentions, Officer Way followed police training protocol to create physical distance between himself and the antagonists. With the

assistance of backup, Officer Way was able to discuss the spray painting of property with Ms. Griffin, who then asked to speak with me as I was on duty that evening.

50. GPD diligently serves the people of Graham regardless of political message or viewpoint. I commend my officer's for their professional handling of the demonstrations thus far and look forward to continuing to serve the Graham community, to include peaceful demonstrators.

I declare under penalty of perjury that the forgoing is true and correct.

Executed this the 30th day of July, 2020.

*Kristi Cole*

# CERTIFICATE OF SERVICE

I hereby certify that on this the 30th day of July, 2020, the foregoing **DECLARATION OF KRISTI COLE** was filed using the Court's CM/ECF filing system, which will provide notice of the filing to all counsel of record as follows:

Kristi L. Graunke
Daniel K. Siegel
**ACLU OF NORTH CAROLINA**
PO 28004
Raleigh, NC 27611
Email: kgraunke@acluofnc.org
dsiegel@acluofnc.org

Curtis Scott Holmes
**BROCK PAYNE & MEECE, PA**
3130 Hope Valley Road
Durham, NC 27707
Email: scott.holmes@bpm-law.com

Emerson J. Sykes
Vera Eidelman
**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**
125 Broad St., 18th Floor
New York, NY 10004-2400
Email: esykes@aclu.org
veidelman@aclu.org

Elizabeth Haddix
Mark Dorosin
**LAWYERS COMMITTEE FOR CIVIL RIGHTS**
Under Law Regional Office
P.O. Box 956
Carrboro, NC 27510
Email: ehaddix@lawyerscommittee.org
mdorosin@lawyerscommittee.org

William L. Hill
**FRAZIER HILL & FURY, RLLP**
PO 1559
Greensboro, NC 27402
Email: whill@frazierlawnc.com

Clyde B. Albright
**ALAMANCE COUNTY ATTORNEY**
124 West Elm Street
Graham, NC 27253
Clyde.Albright@alamance-nc.com

*/s/ Anthony J. Biller*
Anthony J. Biller
N.C. State Bar No. 24,117
2501 Blue Ridge Road, Suite 390
Raleigh, NC 27607
Telephone: (984) 220-8750
Facsimile: (877) 398-5240
Email: ajbiller@michaelbest.com

*Attorney for Jerry Peterman, Chip Turner, Melody Wiggins, Jennifer Talley, Ricky Hall, Frankie Maness and Jeffrey Prichard*

13