IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
NO. 1:20-CV-00613-CCE-LPA

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, Alamance County Branch; TAMARA O. KERSEY; COLLEEN TENAE TURNER; TERENCE COLIN DODD; DESTINY CLARKE; NERISSA RIVERA; ADAM ROSE; ANNIE SIMPSON; GREGORY B. DRUMWRIGHT,<br>　　　　　Plaintiffs,<br><br>　v.<br><br>JERRY PETERMAN, in his official capacity as Mayor of the City of Graham, North Carolina; FRANKIE MANESS, in his official capacity as Graham City Manager; CHIP TURNER, in his official capacity as Mayor Pro-Tem of the City of Graham; MELODY WIGGINS, JENNIFER TALLEY, and RICKY HALL, in their official capacities as Graham City Council Members; JEFFREY PRICHARD in his official capacity as Chief of the Graham Police Department; TERRY S. JOHNSON, in his official capacity as Sheriff of Alamance County; EDDIE BOSWELL, STEVE CARTER, BILL LASHLEY, AMY SCOTT GALEY and TIM SUTTON, in their official capacities as Alamance County Commissioners; and BRYAN HAGOOD, in his official capacity as Alamance County Manager,<br>　　　　　Defendants. | **RESPONSE IN OPPOSITION TO SECOND MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION OF TERRY S. JOHNSON, EDDIE BOSWELL, STEVE CARTER, BILL LASHLEY, AMY SCOTT GALEY, TIM SUTTON, AND BRYAN HAGOOD** |

1

NOW COME Terry S. Johnson, in his official capacity as Sheriff of Alamance County; Eddie Boswell, Steve Carter, Bill Lashley, Amy Scott Galey and Tim Sutton, in their official capacities as Alamance County Commissioners; and Bryan Hagood, in his official capacity as Alamance County Manager (hereinafter collectively referred to as "Alamance Defendants"), and respond to Plaintiffs' Second Motion for Temporary Restraining Order and Preliminary Injunction as follows:

1. As the Court is no doubt aware, the months following the death of George Floyd in Minneapolis, Minnesota, have sparked nationwide protests. Unfortunately, some of these protests have become violent, with injuries to demonstrators, law enforcement and even bystanders and business owners. Downtown Greensboro and Raleigh were the site of widespread property damage caused by demonstrations. A significant point of acrimony is the presence of monuments depicting confederate soldiers. For instance, a monument erected as a tombstone erected to 300 confederate dead in Greenhill Cemetery in Greensboro was destroyed. Many people view such monuments, often placed in front of or near a courthouse, as a symbol of racial oppression, whereas others, view them as part of history. A large number of protests have taken place in downtown Graham. Thankfully, no significant injuries have been reported. (See Exhibit "**1**," timeline of Graham protests.)

2. In Graham, a large confederate monument in front of the North side of the courthouse has become a focal point for demonstrations. A google map depicting the area demonstrates that it is in a confined area, with a roadway around it (Exhibit "**2**"). Businesses surround the traffic circle. Thus far, numerous protests have been held in this area without injury or significant property damage.

2

3. Plaintiffs filed this action on July 2, 2020 seeking a Temporary Restraining Order and Preliminary Injunction (D.E. 2). All attorneys worked throughout the holiday weekend to agree to a consent TRO (D. E. 15). Thereafter, the court set a hearing on Plaintiffs' Motion for a Preliminary Injunction. This motion was withdrawn following the recission of a Graham Ordinance as issue in the Complaint (D.E. 1).

4. On July 11, 2020, a wide-scale protest took place in downtown Graham with a large number of protesters, both in support of removing the monument, and counter-protesters opposing such views. The protesters obtained a permit to hold the demonstration from Department of Transportation. It took place in front of the courthouse and confederate monument, with no interference from law enforcement, except to make arrests for trespassing and disorderly conduct. (See Aff. of Gaither, D.E. 22-2).

5. During the protest, which was held on a Saturday, Plaintiffs' counsel, Elizabeth Haddix, notified Defense counsel for Graham and the Alamance Defendants that she had observed flagpoles she believed were sharpened like spears. Both counsel for the Graham Defendants and Alamance Defendants, promptly notified law enforcement personnel on the ground, while also urging Plaintiffs' counsel to do so. (See Exhibit "**3**," emails)

6. The following Monday, a photo was produced by Plaintiffs of these objects which were again transmitted to law enforcement. See photo, Exhibit "**4**."

7. Thereafter, and continuing to this day, Defense counsel has expressed a willingness to sit down with Plaintiffs' counsel to craft a resolution to this matter. Copies of those communications are attached hereto for the court's review (Exhibit "**5**").

3

8. Plaintiffs Amended their Complaint on July 17, 2020 (D.E. 27) adding the Alamance County Board of Commissioners as Defendants.

9. As the Court can see, Defense counsel has agreed to discuss the issues on Plaintiffs' list of concerns and asked on multiple occasions to meet and confer.

10. On July 25, 2020, a demonstration was held in which four (4) arrests were made, primarily for blocking traffic.

11. On July 28, 2020, Defense counsel for the Alamance Defendants sent a detailed letter to Plaintiffs' counsel addressing issues raised by Plaintiffs. (See Exhibit "**6**"). On the same day, the Second Motion for Temporary Restraining Order was filed without prior notice (D.E. 47). The motion makes specific reference to the existence of a State of Emergency Order in effect in Graham. However, that Order was rescinded on July 12, 2020, over two (2) weeks prior to the filing and was publicly available. (See Exhibit "**7**"). In any event, Plaintiffs' Counsel had not brought their belief that the July 10th Order was still operative to the attention of Defendants' Counsel prior to the filing of the Second TRO Motion or else this factual issue could have been easily resolved and corrected, if necessary.

12. Late that same afternoon, Counsel Haddix requested documents from the arrests on Saturday, which were submitted to her.

13. That evening, undersigned counsel received a phone call from Attorney Haddix, contending that protesters were being threatened with arrest and otherwise being treated unlawfully by both Graham police and the Alamance County Sheriff's Office. As the declaration of Kernodle illustrates, officers observed protesters painting sidewalks. No arrests were made. Plaintiffs have provided a portion of a video of these interactions.

4

(See Exhibit "**8**," Email containing links to videos).  Likewise, Defendants have provided this court with a link to a more complete video.  See also, (https://www.youtube.com/watch?v=fi091YH0smE&feature=youtu.be).  However, in the partial video provided by Plaintiffs, a protester can clearly be heard saying that "they (referring to law enforcement) are not telling us we cannot protest."  These Defendants submit that is not only reasonable, but the officers' sworn duty to investigate whether permanent damage is being done to a public sidewalk.  As the Court can see for itself, the officers are not aggressive, but relaxed and professional, even in the face of verbal abuse from one protester.

14. As the Court can see from photographs attached to D.E. 47-1 and D.E.47-8 to Plaintiffs' motion, demonstrators have been allowed near the monument but prevented from climbing on it or damaging it.

15. The Alamance County Defendants have notified Plaintiffs' counsel that they are willing to rework their operational plan for protests, in an effort to safely accommodate Plaintiffs' specific requirements.  Unfortunately, the filing of the Second TRO has placed discussion of these accommodations on hold.

16. The Alamance Defendants respectfully submit that such a plan would allow protesters to adequately transmit their message and not interfere with their First Amendment rights in any way.  Absent Plaintiffs' refusal to discuss the matter with them, and instead file motions for TRO's, with full knowledge Defendants are diligently working to answer questions Plaintiffs' have raised, it is impossible to make headway, which again, Defendants stand ready and willing to do.

17.     Moving the substance of the Second Motion for a Temporary Restraining Order, the Plaintiffs cannot demonstrate a likelihood of success on the merits because the Plaintiffs conflate two (2) different sets of policies.  For purposes of this TRO only, it is not contested that prior to June 2020 the grounds of the Historic Courthouse were open to protests and demonstration and governed by a content-neutral policy (DE 47-2, ¶ 18; 2nd Decl. of B. Brown).  This policy is not at issue in the present lawsuit.  However, after June 2020, the Historic Courthouse grounds were temporarily closed to all protestors due to safety concerns.  (See Exhibit "**9**," Decl. of David Sykes, ¶ 11; Motion TRO ¶ 4).

18.     For purposes of this TRO Hearing only, the Alamance Defendants do not presently dispute that the temporary closure regulates protected speech and applies to public sidewalks that serve as traditional public fora. As outlined in the previous paragraph, the Alamance Defendants submit that the temporary closure to all protests is a content-neutral regulation in that may be "justified without reference to the content of the regulated speech."  Clark v. Cmty. for Creative Non-Violence, 468 U.S. 288, 293, 104 S. Ct. 3065, 82 L. Ed. 2d 221 (1984). Additionally, a total ban on expressive activity in a traditionally public fora must have a sufficient nexus to the public interest undergirding the restriction.  United States v. Grace, 461 U.S. 171 at 181.  For instance, "activities [that] obstructed the sidewalks or access to the building, threatened injury to any person or property, or in any way interfered with the orderly administration of the building or other parts of the grounds" could be a reason to institute a total ban.  Id.  The Court goes on to say "of course, this is not to say that those sidewalks, like other sidewalks, are not subject to reasonable time, place, and manner restrictions, either by statute or by regulations…" Id at 184.  Thus, the Court should apply the time, place, and manner

6

doctrine to determine whether the temporary restrictions on protected speech violate the First Amendment.

19. The temporary closure must be narrowly tailored to serve a significant governmental interest, and… leave[s] open ample alternative channels for communication of the information. A regulation is narrowly tailored if it: (a) "'promotes a substantial government interest that would be achieved less effectively absent the regulation,'" and; (b) does not "burden substantially more speech than is necessary to further the government's legitimate interests." Clark, 468 U.S. at 293).

20. If a City's interest "'in maintaining the safety, order, and accessibility of its streets and sidewalks'" is sufficient to justify a time, place, and manner regulation. Green v. City Of Raleigh, 523 F.3d 293, 301 (4th Cir. 2008) (quoting Cox v. City of Charleston, 416 F.3d 281, 284 (4th Cir. 2005)), then surely the Alamance County Defendants' interest in protecting the safety, order, and accessibility of the courthouse and the reduction or prevention of violence and damage is a substantial interest.

21. The Alamance Defendants must "demonstrate that the Policy materially advances an important or substantial interest by redressing past harms or preventing future ones." Satellite Broad. & Commc'ns Ass'n v. FCC, 275 F.3d 337, 356 (4th Cir. 2001). "Although we do not require the government to present a panoply of empirical evidence in order to satisfy this standard, it must nonetheless make some evidentiary showing that the recited harms are "'real, not merely conjectural,'" and that the Policy "'alleviate[s] these harms in a direct and material way.'"). Ross v Early, 746 F.3d 546, at 555 (internal quotation marks and citation omitted). Additionally, the Alamance Defendants are "obliged to demonstrate that [they] actually tried or considered less-speech-restrictive

7

alternatives and that such alternatives were inadequate to serve the government's interest." Billups v. City of Charleston, 961 F.3d 673, at 688.

22. The Alamance Defendants put forward that the threats to the safety of the protestors and counter-protestors as well as the demonstrated damage caused in other locations shows that a real and significant risk to public safety exists. As the Ross v. Early case makes clear, the challenged policy must act to alleviate the harm or prevent future harm. There is no requirement that the County stand by and wait for a harm to occur before acting to prevent it. Further, without the temporary closure of the courthouse grounds to all protestors, there is a much higher risk of conflict. As experience has shown, and the Plaintiffs admit, there are two (2) groups of protestors who often appear when protests occur around the confederate monument. If one group of protestors has access to the monument and courthouse grounds, the other side will demand access. It is this competition for access to the monument which escalates conflicts and leads to emotional reactions, such as the one described by Barrett Brown in his declaration (D.E. 47-2). Therefore, anything less than a total temporary ban on access to all groups will make the type of emotional reaction described by Mr. Brown all the more common. When both sides are having these types of emotional reactions in close quarters, there is a clear risk of harm. (Decl. of Sykes, ¶ 11)

23. Next, the Alamance Defendants must show whether the temporary ban "burden[s] substantially more speech than is necessary to further the government's legitimate interests." Ward, 491 U.S. at 799. To satisfy this standard, the County Defendants need not regulate using "the least restrictive or least intrusive means" available to achieve its goals. Id. at 798. Put differently, "[s]o long as the means chosen are not substantially

broader than necessary to achieve the government's interest . . . the regulation will not be invalid simply because a court concludes that the government's interest could be adequately served by some less-speech restrictive alternative." Id. at 800.

24. For purposes of this TRO, it is the Alamance Defendants' understanding that the TRO Motion only challenges the temporary closure of the courthouse grounds. As such, the temporary closure does not impact the ability of the Plaintiffs to communicate their message. As the declarations reveal, protests are happening in the presence of the confederate monument. "[R]estrictions on the time, place, or manner of protected speech are not invalid simply because there is some imaginable alternative that might be less burdensome on speech." Ross, 746 at 555.

25. The final prong of the time, place, and manner test asks whether the temporary ban "'leave[s] open ample alternative channels for communication of the information.'" *Id.*

26. As the July 11 protest reveals, there are ample alternatives for the protestors to communicate their message without being allowed on the courthouse grounds. Further, the Plaintiffs' own evidence shows that the protest area has been situated immediately adjacent to the Historic Courthouse and in full unobstructed view of the confederate monument and within earshot of the place being protested.

27. Finally, neither the balance of equities nor the public interest weigh in favor of granting the TRO. The Alamance Defendants have been responsive to all requests by Plaintiffs' counsel, responded at night, and on weekends. They have offered time and time again to see if there is a compromise to be had, only to essentially be met with a response of "that will not work." To date, Plaintiffs have failed to put forward a positive

9

suggestion other than to generally suggest, they should be allowed to do as they want, regardless of other competing interests. Additionally, both the Plaintiffs and Defendants agree that the currently occurring protests have been peaceful. The strong public interest in preventing violence and harm suggests that the total temporary ban is, at the least, not contributing to violence. As such, the preservation of the peaceful status quo is in the public interest.

28. In conclusion, Plaintiffs are routinely demonstrating near the monument and there is no imminent risk of irreparable harm, necessitating the entry of a TRO in this matter.

WHEREFORE, the Alamance Defendants respectfully request the Plaintiffs' Second Motion for Temporary Restraining Order and Preliminary Injunction be DENIED.

RESPECTFULLY SUBMITTED.

This the 30th day of July, 2020

/s/ William L. Hill
William L. Hill (NCSB #21095)
*Attorney for Defendants Johnson, Hagood, Boswell, Carter, Lashley, Galey, and Sutton*

**FRAZIER, HILL & FURY, R.L.L.P.**
2307 W. Cone Boulevard, Suite 260
Post Office Drawer 1559
Greensboro, North Carolina 27401
Telephone: (336) 378-9411
Facsimile: (336) 274-7358
whill@frazierlawnc.com

/s/Clyde B. Albright
Clyde B. Albright (NCSB #10778)

10

Case 1:20-cv-00613-CCE-LPA   Document 54   Filed 07/30/20   Page 10 of 12

*Attorney for Defendants Johnson, Hagood, Boswell, Carter, Lashley, Galey, and Sutton*

**ALAMANCE COUNTY ATTORNEY**
124 West Elm Street
Graham, NC 27253
(336) 570-4046 (voice)
(336) 570-6788 (facsimile)
Clyde.Albright@alamance-nc.com
Ben.Pierce@alamance-nc.com

**CERTIFICATE OF SERVICE**

11

The undersigned does hereby certify that a copy of the foregoing **RESPONSE IN OPPOSITION TO SECOND MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUCTION OF TERRY S. JOHNSON, EDDIE BOSWELL, STEVE CARTER, BILL LASHLEY, AMY SCOTT GALEY, TIM SUTTON, AND BRYAN HAGOOD** was duly served upon all parties hereto in accordance with the provisions of Rule 5 of the Federal Rules of Civil Procedure through the CM/ECF system in effect for the United States District Court for the Middle District of North Carolina as follows:

**Counsel for Plaintiffs**

Kriste L. Graunke: kgraunke@acluofnc.org
Daniel K. Siegel: dsiegel@acluofnc.org
Elizabeth Haddix: ehaddix@lawyerscommittee.org
Mark Dorosin: mdorosin@lawyerscommittee.org
Vera Eidelman: veidelman@aclu.org
Emerson Sykes: esykes@aclu.org
C. Scott Holmes: scott.holmes@lockamylaw.com

**Counsel for Defendants**

Clyde B. Albright: clyde.albright@alamance-nc.com
Anthony J. Biller: ajbiller@michaelbest.com

This the 30th day of July, 2020.

/s/ William L. Hill
William L. Hill (NCSB #21095)
*Attorney for Defendants Johnson, Hagood, Boswell, Carter, Lashley, Galey, and Sutton*