IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Civil Action No. 1:20-CV-00613

| | |
|---|---|
| NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>JERRY PETERMAN, et al.,<br><br>*Defendants.* | **SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' SECOND MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION** |

Plaintiffs seek a preliminary injunction to block County Defendants' policy of prohibiting protest at or near the Courthouse. Specifically, Plaintiffs seek to protest on (1) the steps on the north, east, south, and west sides of the Courthouse ("Courthouse steps"), *see* Ex. 1 (Second Kersey Decl.) ¶ 5; (2) the lawns on each side of the Courthouse ("Courthouse grounds"), *id.* ¶¶ 3, 4; (3) the sidewalk encircling the Courthouse and the shorter walkways connecting the steps on each side to that longer sidewalk (together, "Courthouse sidewalk"), *id.* ¶ 3; (4) the area marked "reserved" between the Courthouse sidewalk and the Confederate monument, where cars do not drive or park ("reserved area"), *id.* ¶ 9; and (5) the red pedestrian path that runs from the Courthouse sidewalk along the west side of the Confederate monument up to the front curb framing the landscaped mound and flowers ("Confederate monument sidewalk"), *id.* ¶ 11.

Each of these spaces constitutes a traditional public forum. This Court has already held that the Courthouse steps, sidewalk, and grounds "are a traditional public forum,"

1

DE 57 (Memorandum Opinion and Order) at 5–6, and has recognized that "it is undisputed that [the Courthouse steps, sidewalk, and grounds, and the reserved area] are a traditional public forum." *Id.* at 13. With respect to the reserved area, the Court correctly considered it to be "part of the sidewalk" after finding that "no vehicles travel between the statue and the courthouse" and that "it is not used as a parking space." *Id.* at 5.[1]

Plaintiffs additionally seek to protest on the Confederate monument sidewalk, which is equally a traditional public forum. "The typical traditional public forum is property which has the physical characteristics of a public thoroughfare, which has the objective use and purpose of open public access or some other objective use and purpose inherently compatible with expressive conduct, and which by history and tradition has been used for expressive conduct." *Warren v. Fairfax Cty.*, 196 F.3d 186, 191 (4th Cir. 1999) (internal citations omitted). This describes the Confederate monument sidewalk.

While the Confederate monument sidewalk may look like a crosswalk because it is painted, it does not cross any roadway—it runs from the Courthouse sidewalk across the reserved area, in which no vehicles can drive or park, and then along the west side of the monument up to the front curb separating the sidewalk from the flowers surrounding the

---

[1] Plaintiffs read the Court's Order to define the reserved area as part of the sidewalk and, therefore, to hold that it is a traditional public forum. To the extent that the status of that area is in dispute, however, Plaintiffs argue that the reserved area is equally a traditional public forum for largely the same reasons that follow with respect to the Confederate monument sidewalk: it has the physical characteristics of a public thoroughfare; it is designed for safe walking, as vehicles cannot travel through it and do not park there, *see* DE 57 at 5; Ex. 1 ¶ 9; it lies directly in front of a seat of government, *see* Ex. 1 ¶ 9; and there is a history of protest or expressive events in that location, *see* Ex. 2 (*Alamance Gleaner* May 28, 1914 news article).

Confederate monument. *See* Ex. 1 ¶¶ 9, 11; *see also* DE 57 at 5. Accordingly, it "has the physical characteristics of a public thoroughfare." *Warren*, 196 F.3d at 194. And its use and function are identical to that of all sidewalks: it is "designed for safer and more convenient walking." *Id.* at 195. The fact that it is close to trafficked streets "does not suggest that it is not a public forum." *Id.* (holding that narrow median surrounded by streets and U-shaped driveway is a traditional public forum).

In addition, as "an outdoor, non-enclosed area, open to the public," the Confederate monument sidewalk is "compatible with expressive activity." *Id.* at 195–96. That it "l[ies] directly in front of a seat of government provides support for the idea that [it] is a traditional public forum." *Id.* Indeed, this makes it "part of a class of property which, by history and tradition, has been treated as a public forum." *Id.* at 196. *See also Occupy Columbia v. Haley*, 738 F.3d 107, 121 (4th Cir. 2013) (holding that State House grounds are a traditional public forum because they are "'the site of the State Government' and comprise . . . 'city [property] open to the general public'" (quoting *Edwards v. South Carolina*, 372 U.S. 229, 235 (1963)). Protests and other expressive events have historically taken place on the Confederate monument sidewalk, including the monument's dedication in 1914. *See* Ex. 2 and DE 47-3 ¶¶ 3, 4 (regarding May 2017 pro-Confederate rally). Thus, the Confederate monument sidewalk—like the Courthouse steps, grounds, and sidewalk—constitutes a traditional public forum.

Plaintiffs face restrictions on their ability to protest in each of these traditional public forums. *See* DE 57 at 8–11 (describing County Defendants' prohibitions on protest as applied to Plaintiffs). Since Plaintiffs filed their Reply on August 3, County

3

Defendants have continued to prevent Plaintiffs and other protesters from protesting on the Courthouse steps, sidewalk, and grounds, and the Confederate monument plaza and sidewalk. *See* Ex. 3 (Wells Decl.) ¶¶ 2, 5–7, 9–10 (describing experience of Alamance Sheriff personnel telling a protester who wore a shirt and carried a small sign that both read "Black Lives Matter" on the north Courthouse sidewalk and Confederate monument sidewalk that he could not be there during court hours on August 4 or after 8:30 PM on August 10); Ex. 4 (Chestek Decl.) ¶¶ 2–4, 6 (describing physical barriers blocking protesters from accessing the north Courthouse steps, grounds, and sidewalk, and the reserved area and Confederate monument sidewalk on August 1).

These are not reasonable time, place, and manner restrictions. To justify any restriction in a traditional public forum, "[t]he County defendants must show that the proffered harms are 'real, not merely conjectural,' and that the policy 'alleviate[s] these harms in a direct and material way.'" DE 57 at 14 (quoting *Satellite Broad. & Comm'cns Ass'n v. F.C.C.*, 275 F.3d 337, 356 (4th Cir. 2001) (alterations in original). But, as the Court has recognized, County Defendants have banned protests "which do not 'obstruct[] the sidewalks or access to the Building, threaten[] injury to any person or property, or in any way interfere[] with the orderly administration of the building or other parts of the grounds.'" *Id.* (quoting *United States v. Grace*, 461 U.S. 171, 182 (1983) (alterations in original). Long-established First Amendment jurisprudence prohibits such restrictions.

"[T]here is no evidence of any obstruction of the sidewalks or access to the courthouse. There is no evidence that protests have ever disrupted the ordinary functions of the courthouse . . . [T]here is no evidence that the plaintiffs here have threatened injury

4

to any person or have interfered with the orderly administration of the building." DE 57 at 14–15. To the contrary, the evidence shows that a prohibition on protest at the Courthouse grounds is not necessary to ensure unobstructed access to or the orderly administration of the Courthouse. *See* Ex. 1 ¶ 5 (noting that there are four doors into and out of the Courthouse, with steps wide enough to enable several people to come in and out of the doors comfortably at the same time). Nor is such a prohibition necessary to prevent injury to any person or property. *See id.* ¶ 9 (noting that the Confederate monument sidewalk does not run through traffic and that the reserved area is not open to traffic); *see also* Ex. 3 ¶¶ 2–3, 8 (describing protests involving one and three people, respectively); Ex. 4 ¶¶ 5, 7–8 (describing small size of protests and lack of any violence or threat of violence between protesters and counter-protesters at recent protests). County Defendants' restrictions are therefore unconstitutional.

Notwithstanding Defendants' current lack of a permitting scheme, Plaintiffs agree that Defendants can enforce "content-neutral [time, place, and manner restrictions that] are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication'" near the Courthouse. *Grace*, 461 U.S. at 177 (citation omitted). For example, Defendants may address specific unlawful conduct by enforcing generally applicable laws prohibiting the obstruction of traffic, banning the use of weapons, prohibiting assault, and the like. If specific threats of imminent unlawful activity arise, Defendants maintain the authority and responsibility to protect the safety and rights of all people involved. What Defendants cannot do, however, is keep in place policies that prophylactically ban protest in a traditional public forum. Absent evidence

5

of actual obstruction, interference, or injury to individuals or property, full access to the traditional public forum must be the default.

For all of the above reasons, the Court should grant Plaintiffs' motion and issue a preliminary injunction enjoining Defendants from enforcing their restrictions on protest on the Courthouse steps, the Courthouse grounds, the Courthouse sidewalk, the reserved area, and the Confederate monument sidewalk.

Respectfully submitted,                                    Dated: August 12, 2020

/s/ Kristi L. Graunke

| | |
|---|---|
| Kristi L. Graunke | Vera Eidelman |
| North Carolina Bar No. 51216 | New York Bar No. 5646088 |
| kgraunke@acluofnc.org | veidelman@aclu.org |
| Daniel K. Siegel | Emerson Sykes |
| North Carolina Bar No. 46397 | New York Bar No. 5020078 |
| dsiegel@acluofnc.org | esykes@aclu.org |
| ACLU of North Carolina | ACLU Foundation |
| P. O. Box 28004 | 125 Broad Street, 18th Floor |
| Raleigh, NC  27611-8004 | New York, NY 10004 |
| Tel: 919-834-3466 | Tel: 212-549-2500 |

/s/ Elizabeth Haddix                                       /s/ C. Scott Holmes

| | |
|---|---|
| Elizabeth Haddix | C. Scott Holmes |
| North Carolina Bar No. 25818 | Lockamy Law Firm |
| ehaddix@lawyerscommittee.org | North Carolina State Bar No. 25569 |
| Mark Dorosin | scott.holmes@lockamylaw.com |
| North Carolina Bar No. 20935 | 3130 Hope Valley Road |
| mdorosin@lawyerscommittee.org | Durham, North Carolina 27707 |
| Lawyers' Committee for Civil Rights Under Law | Tel: 919-401-5913 |
| P.O. Box 956 | |
| Carrboro, NC 27510 | |
| Tel. 919-914-6106 | |

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on August 12, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and e-mailed true copies of this motion and attachments to the following:

Anthony Biller, ajbiller@michaelbest.com

William Hill, whill@frazierlawnc.com

Clyde Albright, clyde.albright@alamance-nc.com

/s/ Elizabeth Haddix
*Counsel for Plaintiffs*
