IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| NATIONAL ASSOCIATION FOR ) | | |
| THE ADVANCEMENT OF ) | | |
| COLORED PEOPLE ALAMANCE ) | | |
| COUNTY BRANCH, et al., ) | | |
| ) | | |
| Plaintiffs, ) | | |
| v. ) | 1:20-CV-613 | |
| ) | | |
| JERRY PETERMAN, et al., ) | | |
| ) | | |
| Defendants. ) | | |

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The plaintiffs move for a preliminary injunction restraining the defendants from prohibiting protests in the immediate vicinity of the Alamance County Courthouse. The plaintiffs are likely to be successful on their claims that the County defendants are violating their First Amendment rights by prohibiting protests on the steps, grounds, and sidewalks surrounding the Historic Alamance County Courthouse, and they are likely to suffer irreparable harm absent preliminary relief.

### PROCEDURAL HISTORY

This case began on July 2, 2020, when the plaintiffs filed a complaint and a motion for temporary restraining order and preliminary injunction directed towards enforcement of an ordinance enacted by the City of Graham that governed parade and protest permits. *See* Docs. 1, 2. The plaintiffs are the Alamance County Branch of the National Association for the Advancement of Colored People and several individuals

actively engaged in protesting against a monument outside the Alamance County Historic Courthouse in Graham, North Carolina. Doc. 27 at ¶¶ 14–22. The defendants fall into two groups: the City Defendants—the mayor, city council members, city manager, and police chief for the City of Graham—and the County Defendants—the Sheriff, county commissioners, and county manager for Alamance County. *Id.* at ¶¶ 23–36.

Shortly before a scheduled hearing, the parties agreed to a consent TRO enjoining enforcement of the contested City ordinance, *see* Doc. 11, which was entered. Doc. 15. Soon thereafter on July 14, the City repealed the ordinance at issue. Doc. 27-1. The plaintiffs withdrew their motion for preliminary injunction, Doc. 23, as it had become moot. *See* Doc. 24.

On July 17, 2020, the plaintiffs filed an amended complaint directed at what they allege are continued actions by the defendants to suppress their First Amendment rights, as well as the rights of other protestors, by prohibiting protests around the Alamance County Courthouse and by imposing restrictions on protests by the repeated issuance of "State of Emergency Declarations." *See* Doc. 27 at ¶¶ 5–10. The pending motion for a Temporary Restraining Order was filed on July 28, 2020 and is directed towards both practices. Doc. 47. The City of Graham defendants filed a written response with evidence, Docs. 53, 53-1–53-4, as did the Alamance County defendants. Docs. 54, 54-1–54-9. A hearing was held on July 30, 2020. Minute Entry 07/30/2020. Following the hearing, the plaintiffs filed a reply brief, Doc. 55, and the County Defendants filed a sur-reply. Doc. 56.

2

At the conclusion of the hearing, the Court denied the motion to the extent it was directed against the City Defendants, based on facts found and reasons stated in open court; that aspect of the pending motion will not be addressed further here. *See* Minute Entry 07/30/2020. The Court took the motion under advisement to the extent it was directed against the County Defendants.

In a written order entered shortly thereafter, the Court found that the plaintiffs were likely to be successful on the merits in their claims against the County Defendants and were likely to suffer irreparable harm. *See generally* Doc. 57. The Court denied the motion for a temporary restraining order because of the need to evaluate the specific language for a preliminary injunction and to give the defendants a short time to plan for the end of their long-term prohibition. Doc. 57 at 17-18. The Court indicated it would likely grant the motion for preliminary injunction but allowed the parties to submit additional evidence and briefing; it also invited submissions on appropriate language for an injunction. *See id.*

The County Defendants filed a response, Doc. 58, establishing that they had a post-injunction plan for managing the space and providing a revised operating procedure for the Alamance County Courthouse grounds. Doc. 58-1. Despite the specific invitation from the Court, *see* Doc. 57 at 19, the defendants did not suggest any language for the preliminary injunction, *see* Doc. 58, nor did they suggest any language to cover emergency situations. *See id.*

The plaintiffs also filed a supplemental brief with evidence. Doc. 59; Docs. 59-1 to 59-19. They asked the Court to specifically enjoin the County Defendants from

3

prohibiting protests on: the steps on all sides of the courthouse; the lawns on the courthouse grounds; the sidewalk encircling the courthouse inside the traffic roundabout; the walkway from the courthouse steps to the sidewalk; the area between the monument and the courthouse marked "RESERVED"; and the red portion of the crosswalk that runs beside the monument. Doc. 59 at 1. In response to the defendants' submission, the plaintiffs contended that the new policy, while an improvement, still violates their constitutional rights. *See* Doc. 60. The County Defendants argue otherwise. Doc. 61.

The motion for preliminary injunction is now ripe for review.

## FINDINGS OF FACT

For purposes of this Order only, the Court makes the following findings of fact, after consideration of all the evidence submitted. As is necessary and in the context of specific issues, the Court will address and find other relevant facts throughout this Order.

The plaintiffs regularly attempt to exercise their First Amendment rights to protest, assemble, and associate in Graham, and recently they have organized, engaged in, or attempted to organize or engage in protests against institutionalized racism, police violence against Black people, and the continued presence of a Confederate monument in front of the Alamance County Historic Courthouse[1] in Graham. The Alamance NAACP has planned and organized such protests, Doc. 2-1 at ¶¶ 7–8, and many of the individual plaintiffs have participated in vigils, rallies, protests, and other expressive acts directed against systemic racism and the Confederate monument. *See, e.g.*, Doc. 2-2 at ¶ 3; Doc.

---

[1] All references in this opinion are to the Historic Courthouse, not to the other, newer courthouses in Alamance County.

2-3 at ¶ 6; Doc. 2-4 at ¶ 3; Doc. 47-8 at ¶ 2; Doc. 50-1 at ¶¶ 2–6.  On some of these occasions, counter-protesters who favor keeping the monument in place have also appeared.  Doc. 2-6 at ¶¶ 20–21; Doc. 53-3; Doc. 52 at ¶¶ 26, 44; Doc. 54-9 at ¶ 8.

The Historic Alamance County Courthouse is located in the center of downtown Graham.  *See* Doc. 50-1 at ¶ 7; Doc. 48 at 2; Doc. 53 at 2.  It is a working courthouse that is open Monday through Friday.  Doc. 52 at ¶ 17.  The courthouse sits in the middle of a square, on a relatively small piece of land.  Doc. 50-1 at ¶ 7.  There are small open spaces on each corner with what appear to be grass and trees, which the Court will refer to as the courthouse grounds.  *Id.*; Doc. 52 at ¶ 17 (characterizing the space as "small 'lawns'").  The courthouse and these grounds are surrounded by a sidewalk and parking spaces, which are themselves surrounded by what is essentially a vehicular roundabout.  Doc. 50-1 at ¶ 7.

Highway 87, also known as Main Street, enters and exits the square from the south and north, and Elm Street enters and exits the square from the west and the east.  Doc. 50-1 at ¶ 7.  There are businesses and sidewalks around the outside of the square with on-street parking, and vehicular traffic circles the courthouse inside the square.  *Id.*; Doc. 52 at ¶ 19.  There is a small park, known as Sesquicentennial Park, on the northwest corner of the square, caddy-cornered from the courthouse.  Doc. 50-1 at ¶¶ 2, 6–7.

There are four pedestrian crosswalks providing access from the outer rim of sidewalks to the sidewalks surrounding the courthouse, one on each side of the building.  Doc. 50-1 at ¶ 7; Doc. 52 at ¶ 17.  The crosswalks are parts of the roadway accessible to motor vehicles.  While the crosswalk space beside the monument cannot be "driven

through" because of the monument, it is part of the roadway, as the evidence shows it is very close to a parking space and could be used by a vehicle to back out of the parking space. *See* Doc. 59-14.

The only functioning entrance to the courthouse is on the northern side of the building; this entrance has a wide flat area between the "RESERVED" space, *see infra*, and several very wide steps that ascend to the entrance. *See, e.g.,* Doc. 54-9 at ¶ 5; Doc. 59-6.

Outside of the northern entrance to the courthouse is a large Confederate monument. Doc. 50-1 at ¶ 7. One of the crosswalks runs level with the street beside the monument, connecting the sidewalk around the courthouse with the northwestern and northeastern corners of the town square. *Id.*; Doc. 59-15. The monument itself is surrounded by low concrete posts with links of chain running between them and a raised curb which encloses small landscaped flower beds at the base of the statue. *Id.* at ¶¶ 7–8, Doc. 59-12. This is in turn surrounded by temporary, movable barriers that are about waist-high. *See* Doc. 59-12.

Between the flower bed and the sidewalk outside the courthouse steps, there is a paved area level and in line with the parking space marked as "RESERVED" that is considered part of the courthouse grounds. *See* Doc. 59-15. Vehicles do not drive through this space, Doc. 59-1 at ¶ 9, which functions like a sidewalk.[2] *See, e.g.*, Doc. 54-

---

[2] The Court's order denying the temporary restraining order found as a fact that "no vehicles travel" through this space and that "it is not used as a parking space." Doc. 57 at 5. In their submission afterwards, the defendants did not contest or address this fact. In their new policy, the County Defendants say that this area is used as a parking space, Doc. 58-1 at 2, but there is no

6

9 at ¶ 6 (characterizing the entire area between the North entrance and the monument as a sidewalk.)

Highway 87 is a state highway. Doc. 54-9 at ¶ 3. Elm Street is a city street. The courthouse, the grounds inside the sidewalks, the monument itself, and the small piece of land currently planted with flowers which surrounds the monument are owned and controlled by Alamance County. *Id.* at ¶ 6; *see* Doc. 52 at ¶¶ 14–15. The Alamance County Sheriff's Office is responsible for law enforcement on courthouse grounds and other county property, Doc. 54-9 at ¶ 4, and the Sheriff and his deputies routinely police and manage access to the public sidewalks immediately adjacent to the courthouse. Doc. 52 at ¶ 15.

Demonstrations and protests have historically been held on the courthouse steps and in the spaces immediately outside and around the courthouse. Doc. 2-9 at ¶ 7; Doc. 50-1 at ¶ 18; Doc. 52 at ¶ 14; Doc. 54-9 at ¶ 7. The courthouse steps and grounds and the sidewalks immediately surrounding the courthouse are a traditional public forum. *See* Doc. 48 at 14; Doc. 53 at 9–10; Doc. 54 at 6.

After the death of George Floyd at the hands of a police officer in May, protests near the courthouse increased. Doc. 52 at ¶¶ 6, 9–10. In late May and early June, law enforcement in Graham and Alamance County became aware of news reports of violence and property damage during protests in Fayetteville, Greensboro, and Raleigh, larger

---

affidavit or declaration on this point, nor did the County Defendants address this in their supplemental briefing. *See* Doc. 58. Therefore, the Court has not changed this finding of fact.

7

cities not far from Graham. *Id.* at ¶¶ 32–34; Doc. 54-9 at ¶ 9. According to news reports, these incidents included a fire that damaged the Guilford County Courthouse in Greensboro, Doc. 54-9 at ¶ 9; vandalization and rock throwing in Greensboro, Doc. 52 at ¶ 33; property damage and looting in Raleigh, *id.* at ¶ 32; and unspecified violence and looting in Fayetteville. *Id.* at ¶ 34. There is some evidence that there were a few threats of property damage in Graham, *see id.* at ¶ 49; Doc. 54-9 at ¶ 10; Doc. 52-1 at 5, but there is no evidence of actual property damage in or around the courthouse square.

At some point around this time, the Alamance County Sheriff's Office decided to deny access to the grounds immediately surrounding the courthouse to all protest groups. Doc. 54-9 at ¶ 11. The Sheriff's Office considers this to be a "temporary policy" intended to stay in place "during this time of heightened tension" and "while the political process plays out." *Id.* The Sheriff's Office considers this total prohibition to be necessary in light of the violence and property damage in other North Carolina cities, the difficulty in ensuring the safety of protestors and the public given the limited space on the courthouse grounds inside the roundabout if two competing groups both wish to have access to the location at the same time, and the need to prevent conflict on the courthouse grounds from escalating into violence or destruction of property. *Id.* at ¶¶ 9–11.

While the scope of the prohibition is not entirely clear, as best the Court can tell, the Sheriff prohibits any protestors on the courthouse steps, the sidewalks immediately adjacent to and surrounding the courthouse, the space between the sidewalk and the monument, the crosswalk beside the monument, and on or beside the monument itself. *See* Doc. 54-9 at ¶¶ 11, 13. The prohibition remained in place for approximately two

months, though since the Court indicated a preliminary injunction was likely the prohibition has been somewhat relaxed. *See* Doc. 59-1.

Despite the prohibition, individual plaintiffs engaged in protests or attempted to engage in protests. *See, e.g.*, Doc. 2-2; Doc. 2-9. The protestors regularly gather in Sesquicentennial Park, on the northwest corner of the square, Doc. 50-1 at ¶¶ 2, 6–7; Doc. 54-9 at ¶ 13, and, while not completely clear, the Court infers that protestors are allowed on the sidewalks on the outer rim of the square. *See* Doc. 2-4 at ¶¶ 13–14.

Protestors have attempted to protest on the courthouse grounds but have been prevented from doing so on multiple occasions by Sheriff's deputies and physical impediments such as barricades put up by the County Defendants. Doc. 2-4 at ¶¶ 3–13; Doc. 47-8 at 2–3; Doc. 59-19 at ¶ 2-3. On multiple occasions throughout June and July and into August, the plaintiffs and other protestors have been explicitly threatened with arrest, *see, e.g.*, Doc. 2-5 at ¶¶ 2-10, or had access restricted, often upon implicit threat of arrest. Docs. 47-8 at ¶ 3; 59-18 at ¶¶ 6-7, 10; 59-19 at ¶¶ 5, 8. Others have been arrested for coming too close to, but not on, the monument or flower bed, or coming onto the courthouse sidewalks or steps. Doc. 52 at ¶ 46; Doc. 47-8 at ¶ 6; Doc. 54-9 at ¶ 14. Doc. 50-1 at ¶¶ 10–12.

Despite tensions between protestors and counter-protestors, the protests have been overwhelmingly peaceful. Doc. 52 at ¶ 44. Two pro-monument protestors were arrested for simple assault and disorderly conduct on June 2, *see id.*, two people were arrested following a physical altercation on June 21, Doc. 54-9 at ¶ 8, and one person was arrested for carrying a weapon at a protest. *Id.* at ¶ 10. Otherwise, there is no evidence of actual

9

violence. *See* Doc. 59-19 at ¶ 8. There is also no evidence that any property has been defaced or destroyed during any of the protests. There have, however, been a few threats of violence, including the use of weapons, and a few threats to damage the monument on social media. *See, e.g.*, Doc. 52-1; *see also* 54-9 at ¶¶ 9–10.

After the Court indicated a preliminary injunction was likely and, *inter alia*, gave the County Defendants time to plan, the County Defendants enacted a new policy governing the use of the courthouse grounds. *See* Doc. 58-1. There is no affirmative evidence in the form of an affidavit or declaration that the County Defendants will not return to a total prohibition on protests if the injunction does not issue, and the County Defendants have not contended that the motion for preliminary injunction is moot.

The plaintiffs contend this new policy remains overly broad and otherwise is constitutionally infirm. Doc. 60. The defendants contend the new policy imposes reasonable time, place, and manner restrictions that are narrowly tailored. But the only question raised in the pending motion is whether the total prohibition on protests should be enjoined. Whether the new policy violates the plaintiffs' First Amendment rights is not ripe for review; if the plaintiffs wish to challenge it, they will need to amend their pleadings and file a new motion for preliminary injunction. The Court expresses no opinion on the new policy.

## ANALYSIS AND CONCLUSIONS OF LAW

To obtain a preliminary injunction, the plaintiffs must demonstrate that they are likely to succeed on the merits; they are likely to suffer irreparable harm absent preliminary relief; the equities favor a temporary restraining order; and a temporary

restraining order serves the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

I.  **Likelihood of Success on the Merits**

The First Amendment prohibits the enactment of laws "abridging the freedom of speech . . . or the right of the people to peaceably assemble . . . ." U.S. CONST. amend. 1; *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). Under long-established First Amendment law, governmental entities are "strictly limited" in their ability to regulate private speech in public fora. *Pleasant Grove City v. Summum*, 555 U.S. 460, 469 (2009); *Davison v. Randall*, 912 F.3d 666, 681 (4th Cir. 2019), *as amended* (Jan. 9, 2019). When the government maintains property which has been used as a traditional public forum for the expression of opinions, the government is required to accommodate all speakers and may only restrict the time, manner, and place of speech. *See, e.g.*, *Am. Civil Liberties Union v. Mote*, 423 F.3d 438, 443 (4th Cir. 2005). Such restrictions must be content-neutral, narrowly drawn to serve a significant state interest, and leave open ample channels of communication of the information. *Id.* "Additional restrictions such as an absolute prohibition on a particular type of expression will be upheld only if narrowly drawn to accomplish a compelling governmental interest." *United States v. Grace*, 461 U.S. 171, 177, (1983).

"Sidewalks, of course, are among those areas of public property that traditionally have been held open to the public for expressive activities and are clearly within those areas of public property that may be considered, generally without further inquiry, to be public forum property." *Grace*, 461 U.S. at 179; *accord Occupy Columbia v. Haley*, 738

11

F.3d 107, 121 (4th Cir. 2013) (treating area outside South Carolina State House as a public forum for First Amendment purposes); *see also O'Connell v. Town of Burgaw*, 262 F. Supp. 3d 316, 320 (E.D.N.C. 2017) (finding the Pender County Courthouse Square and its surrounding public streets and sidewalks was a public forum). For purposes of this motion, it is undisputed that the courthouse steps, the sidewalks surrounding it, including the paved "reserved" space between the sidewalk and the monument, and the lawns at the courthouse corners are a traditional public forum. *See* Doc. 54 at ¶ 18.

The Sheriff's long-term policy prohibits all protests on the courthouse steps, grounds, and sidewalks, regardless of content, and in this sense it is content-neutral. *See generally Ross v. Early*, 746 F.3d 546, 550, 552 (4th Cir. 2014) (finding a city policy that applied to all protestors was content-neutral). The plaintiffs have not contended otherwise for purposes of this motion. *See* Doc. 48.

It is highly doubtful that the Sheriff's total prohibition on protests on the sidewalks, grounds, and steps of the courthouse, should it continue or resume, will survive scrutiny. The Supreme Court has held that a total prohibition against protests on the sidewalks surrounding a courthouse is unconstitutional where the prohibition does not sufficiently serve those public interests that are urged as its justification. *Grace*, 461 U.S. at 181. The Supreme Court acknowledged "the necessity to protect persons and property or to maintain proper order and decorum" within a courthouse's grounds but noted that a "total ban" on protests which do not "obstruct[ ] the sidewalks or access to the Building, threaten[ ] injury to any person or property, or in any way interfere[ ] with the orderly

12

administration of the building or other parts of the grounds" is "no more necessary for the maintenance of peace and tranquility on the public sidewalks surrounding the [courthouse] than on any other sidewalks in the city." *Id.* at 182.

The County Defendants contend that the need to prevent damage to the courthouse and to protect the public justify the total prohibition. Doc. 54-9 at ¶11. The County Defendants must show that the proffered harms are "real, not merely conjectural," and that the policy "alleviate[s] these harms in a direct and material way." *Satellite Broad. & Comm'cns Ass'n v. F.C.C.*, 275 F.3d 337, 356 (4th Cir. 2001) (quoting *Turner Broad. Sys. v. F.C.C.*, 512 U.S. 622, 664 (1994).[3] But here, just as in *Grace*, there is no evidence of any obstruction of the sidewalks or access to the courthouse. There is no evidence that protests have ever disrupted the ordinary functions at the courthouse or even that protests have ever taken place at times when the courthouse is open for operation. Like *Grace*, there is no evidence that the plaintiffs here have threatened injury to any person or have interfered with the orderly administration of the building. There is limited evidence of a very small number of vague threats of property damage, *see* Doc. 54-9 at ¶ 10; Doc. 52 at ¶ 49, but it is not recent. Likewise, the evidence of property damage in other cities and counties is now many weeks old. A total prohibition on protests on the courthouse grounds is an extreme remedy, it is not narrowly tailored, and it does not sufficiently serve these proposed justifications. *Grace*, 461 U.S. at 182.

---

[3] The Court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

The County Defendants also point out that the space around the monument, which is the focus of the protests, is small and that conflict is likely to result from allowing protestors and counter-protestors access to the space between the monument and the courthouse. If that is so, and it appears to be, the County is free to impose reasonable time, place, and manner restrictions on protests in this small space. But a total, long-term prohibition is not a reasonable time, place, and manner restriction. *See Ward v. Rock Against Racism*, 491 U.S. 781, 800 (1989). The plaintiffs are likely to prevail on the merits of their claim that the Sheriff's total long-term prohibition on protests on the steps, grounds, and sidewalks surrounding the courthouse is unconstitutional.

To the extent the plaintiffs contend that the narrow curb separating the monument flower beds from the street on the north, a parking space on the east, the area between the monument and the sidewalk on the north, and the crosswalk on the west is a traditional public forum, the present record does not support that conclusion. There is no evidence that the government has historically "made the space available—either by designation or long-standing custom—for 'expressive public conduct' or 'expressive activity,' and the space is compatible with such activity." *Davison*, 912 F.3d at 681 (quoting *Am. Civil Liberties Union v. Mote*, 422 F.3d 438, 443 (4th Cir. 2005)). As to the crosswalk space beside the monument, that is part of the roadway. The evidence shows it is very close to a parking space and could be used by a vehicle to back out of the parking space.[4] As to

---

[4]The evidence does disclose that Sheriff's deputies prohibited access to the crosswalk by the monument during a protest when the streets were closed to vehicular traffic. *See* Doc. 47-8 at 2-3. The plaintiffs contend that the crosswalk should always be available for protest and have not

the narrow curb separating the monument flower beds from the street and reserved space and as to the crosswalk beside the monument, the plaintiffs have not established that they are likely to prevail on the merits.

## II.     Irreparable Injury

"[L]oss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373–74 (1976).  The plaintiffs here have already been denied their First Amendment free speech rights for some weeks by the total prohibition of protests on the courthouse grounds.  The issues are matters of intense public interest and discussion in the here and now.  The plaintiffs are thus likely to suffer irreparable injury.  This injury is imminent and immediate as the plaintiffs have ongoing plans for protests about and near the monument, they have been blocked from accessing the courthouse grounds, and they have been threatened with arrest if they attempt to pass through the Sheriff's barricades.  There have been shifting enforcement practices recently as to the prohibition, but the total prohibition was in place for weeks and there is no evidence it will not be resumed.

## III.    Balance of Equities and the Public Interest

An injunction of a likely unconstitutional governmental practice ordinarily does not harm the government, *see Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002), and upholding constitutional rights "surely serves" the public interest.  *Id.*  These factors favor a preliminary injunction against the total prohibition of protests.

---

suggested the County Defendants should be enjoined from restricting access to the crosswalk when the street was closed.

No party took advantage of the Court's invitation to submit language for an emergency exception. The Court nonetheless concludes an exception is appropriate and in the public interest. For example, if someone on the sidewalk had a heart attack and was unresponsive, prohibiting access so emergency personnel could reach the person is a good idea; one can imagine any number of exigent situations, however unlikely or rare, where a very short total prohibition would be necessary. An injunction which enjoined the defendants from acting in the face of such an emergency would be overbroad. Therefore, the Court will include an explicit provision that the injunction does not prohibit the defendants from "temporarily restricting access" to the outdoor Courthouse spaces "during short-term emergency situations." For clarity, even though it seems obvious, a protest, even a large protest, does not constitute a short-term emergency situation; if it did, the injunction would be meaningless in the context of this case.

## CONCLUSION

The County Defendants imposed a total prohibition on protests in the traditional public forum of outdoor areas surrounding the Alamance County Historic Courthouse. The total prohibition is not a time, place, and manner restriction, and however strong the governmental interests are, the total prohibition is not narrowly tailored. The plaintiffs are entitled to a preliminary injunction, which will issue by separate order.

This the 14th day of August, 2020.

_____
UNITED STATES DISTRICT JUDGE